934 P.2d 951

**Kenneth P. BAKER, dba K.B. Industries, Plaintiff–Counterdefendant–Respondent– Cross Appellant,**

v.

**Bruce BOREN and Dawneeta Boren, husband and wife, Defendants–Counterclaimants–Appellants–Cross Respondents.**

No. 22173.

Court of Appeals of Idaho.

March 21, 1997.

Orndorff & Trout, Boise, appellants. Kim J. Trout, argued.

Richard K. Linville, Emmett, argued, for respondent.

WALTERS, Chief Judge.

This case involves a contract dispute which arose from a remodeling project that Kenneth P. Baker and Michael Solis, d/b/a K.B. Industries (K.B.), performed on a residential home, located in Boise, for Bruce and Dawneeta Boren (the Borens).[1] K.B. filed this action claiming that the Borens breached their contract by refusing to pay K.B. in full once substantial performance had been completed. The district court held in favor of K.B. and ruled that the Borens owed K.B. $1,475 in damages. The Borens appeal, and K.B. cross-appeals. For the reasons set forth below, we affirm the district court's determination that the contract was breached, but we remand for further findings of fact on the issue of damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Borens were licensed real estate agents involved in the business of purchasing, remodeling and reselling residential real property. K.B. was in the house remodeling business. Prior to the project at issue here, the Borens and K.B. had worked together on several residential remodeling projects. Each project essentially constituted painting, patching and repairing, and the materials and finishes used were generally of budget quality. These projects were completed on time and in compliance with all city and county codes and the lenders' requirements. After providing an estimate on each project, K.B. acted as the general contractor, entering into contracts with subcontractors, directing their work and paying them upon completion of their respective jobs.

In July of 1991, the Borens acquired property located at 9521 Wright Street in Boise. Shortly thereafter, the parties walked through the residence to discuss desired

---

1. Baker and Solis were partners during the time at issue. Although the partnership no longer exists, Solis has an interest in the outcome of this case even though he is not a party to the action. Solis's testimony indicates that he has consented to allow Baker to prosecute the action and to be bound by the outcome.

changes. On March 18, 1992, K.B. provided the Borens with an estimate of $52,207 for the proposed remodeling work. A substantial portion of this estimate was based on prices from various suppliers and subcontractors provided to K.B. by the Borens. The estimate was then used by the Borens as a basis for obtaining financing for the project.

K.B. began remodeling the Wright Street property in late March of 1992. After the project had begun, however, the Borens decided to use the property as their personal residence rather than reselling it when the remodeling was finished. They requested that better grades of materials and finishes be used and that additional work be completed. However, no written modifications were entered into by the parties as a result of these requests. During the project, K.B. occasionally submitted bills for work allegedly completed, which the Borens promptly paid.

On June 17, 1992, Baker, on behalf of K.B., signed a lien waiver which essentially stated that K.B. had performed labor and services on the Wright Street project in the amount of $27,908.66, and that this amount had been paid in full. Baker and Solis then left for a trip to Reno, Nevada, from June 19 through June 21. During this time, K.B. employees allegedly continued to work on the Wright Street project. On June 22, Dawneeta Boren informed Baker and Solis that she and her husband had paid K.B. in full. K.B. performed no additional work on the project after June 22, and sent the Borens a bill in the amount of $28,190.17, for services rendered. The Borens refused to make any additional payments.

On August 20, 1992, K.B. filed a claim of lien, pursuant to I.C. § 45–507, on the Wright Street property in the amount of $28,190.17, which was later reduced to $25,613.38. K.B. then filed a complaint seeking enforcement of the claim, alleging that the parties had made oral modifications to the original express agreement. These modifications were alleged to be for additional materials and labor which substantially increased the cost of the project beyond that provided for by the original estimate. K.B. also sought relief on the basis of quantum meruit.

The Borens responded that: (1) no oral modifications were made which changed the original agreed cost; (2) K.B. had waived its claim by executing the lien waiver after substantial performance had been completed; and (3) they had paid K.B. in full. The Borens also counterclaimed for damages caused by K.B.'s breach of the original contract. They alleged that because K.B. had failed to pay some of the subcontractors and materialmen, these subcontractors and materialmen had filed claims of lien against the Wright Street property. The Borens sought reimbursement for payments they had made in satisfaction of these claims. They also alleged that K.B.'s claim of lien was invalid, and that it constituted a slander of their title to the Wright Street property. Finally, the Borens sought damages representing lost business profits.

This case was tried before the district court without a jury. The court held that K.B. had a valid claim of lien on the Borens' property, and that K.B. was entitled to damages only in the amount of $1,475, for work performed and materials used from June 18 through June 22, 1992. The court also held that the Borens were not entitled to recover on their counterclaims. This appeal ensued.

## II. ISSUES

The Borens claim that the district court erred in: (1) denying their motion for dismissal at the close of the plaintiff's case; (2) awarding K.B. damages in the amount of $1,475 because (a) insufficient evidence existed to support the court's findings of fact upon which it based the award, (b) the court allegedly erred in allowing Solis to use notes during his testimony and (c) insufficient evidence existed to support the amount of the award; (3) upholding the validity of K.B.'s claim of lien and in concluding that the lien did not constitute a slander of title to the Wright Street property; (4) holding that the original agreement between the parties was implied-in-fact rather than express; and (5) denying them attorney fees at trial.

On cross-appeal, K.B. alleges that the court erred in holding that: (1) the lien waiver applied to all amounts owed to K.B.

by the Borens on and before June 17, 1992; and (2) K.B. was not entitled to a larger remedy under the theory of quantum meruit.

Both parties request attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

It is well established that appellate review of a lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. I.R.C.P. 52(a); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991); *Ficarro v. McCoy*, 126 Idaho 122, 125, 879 P.2d 30, 33 (Ct.App.1994). Rule 52(a) of the Idaho Rules of Civil Procedure provides that: "In all actions tried upon the facts without a jury ... [f]indings of fact shall not be set aside unless clearly erroneous." *Muniz v. Schrader*, 115 Idaho 497, 500, 767 P.2d 1272, 1275 (Ct.App.1989). The task of weighing evidence and finding facts is within the province of the trial court and we will not set aside findings made by the trial court unless they are clearly erroneous. *Alumet, supra; Muniz, supra.* Further, we will give due regard to the opportunity of the trial judge to weigh conflicting testimony and to judge the credibility of witnesses. *Stuart v. State,* 127 Idaho 806, 813, 907 P.2d 783, 790 (1995). We must accept the trial court's findings of fact if they are supported by substantial, competent though conflicting evidence. *Id.*

## IV. DISCUSSION

The following is an individualized analysis of the claims presented by this appeal.

### A. Motion For Dismissal.

At the close of K.B.'s case-in-chief, defense counsel moved to dismiss the plaintiff's action.[2] The court took the motion under advisement and allowed the defense to present their defense and counterclaim. The Borens now claim that the district court erred in denying the motion because no evidence was presented that could support a finding that the contract was implied-in-fact. Rather, they assert that the evidence overwhelmingly supports that—as of March 18, 1992—the parties had entered into an express contract, under which K.B. was to be paid $20,200, not the $27,000 K.B. had received by June 17.

Before addressing whether the district court properly denied the defendants' motion, we must determine whether the district court erred in concluding that an implied-in-fact contract existed. There are essentially three types of contractual arrangements: express contracts, implied-in-fact contracts and contracts implied-in-law. *Continental Forest Products, Inc. v. Chandler Supply Co.,* 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974); *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 942, 854 P.2d 280, 285 (Ct.App.1993). Express contracts exist where the parties expressly agree regarding a transaction. *Id.* Contracts implied-in-fact are those where there

---

2. The transcript of the trial reports that when the plaintiff rested, the court asked if the defense was ready to start its case. In response, the defendants' attorney replied "Well, Judge, I'd prefer not to start the case now, but I do have a motion for the court.... I'd like to file with the court, Your Honor, a motion to dismiss the plaintiff's case under rule 50(a)." Counsel then presented his motion orally; a written copy of the motion does not appear in the record.

Counsel evidently misspoke in his reference to rule 50(a). That rule provides the process for a directed verdict in a case tried to a jury. Here, the case was tried to the court without a jury. Accordingly, we presume that the defense was seeking an order dismissing the plaintiff's case under the involuntary dismissal provision of I.R.C.P. 41(b).

In distinguishing between these two types of motions, our Supreme Court has explained:

> We note initially that when a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a non-jury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff. Thus, in rendering a judgment pursuant to the defendant's motion for dismissal under I.R.C.P. 41(b), the court is not as limited in its evaluation of the plaintiff's case as it would be in a motion for directed verdict. The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether the plaintiff has made out a prima facie case. Instead, it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.

*Keenan v. Brooks,* 100 Idaho 823, 825, 606 P.2d 473, 475 (1980) (citations omitted).

is no express agreement but the conduct of the parties implies an agreement from which the contractual obligation arises. *Id.* To find such a contract, the facts must be such that the intent to make a contract may be fairly inferred. *Podolan, supra.*

We agree with the district court that no express contract was entered into between K.B. and the Borens. We also agree that the contract was implied-in-fact. The parties' testimonies show that each believed that the original $52,207 figure was an estimate, that the exact work to be done was never defined with specificity, and that K.B.'s role in the project was undefined. Although the evidence is conflicting, substantial competent evidence exists to support the court's conclusion that the parties had entered into an implied-in-fact contract.

Accordingly, we conclude that the district court correctly denied the Borens' motion for dismissal. K.B. presented evidence that it was the parties' intent to enter into a contractual relationship, and that based on this conduct, K.B. performed the agreed upon work. K.B. also presented testimonial and documentary evidence that work was performed and the Borens refused to pay K.B. for that work.

After reviewing the record, we conclude that substantial evidence exists to support the district court's determination that K.B. had established its case for breach of an implied-in-fact contract. We hold that the court properly denied the Borens' motion.

## B. Award of Damages in the Amount of $1,475.

In its Memorandum of Findings of Fact and Conclusions of Law, the district court found that:

> 18. By June 17th most of KB's work was complete. Baker and Solis went to Nevada on June 19th, 20th, and 21st. In the meantime KB's employees did some additional work on the project, installing hardware, bathroom cabinets, base trim, and decking. At $15.00 per hour the reasonable value of the labor amounted to $1,475.00.

The Borens claim that evidence does not exist in the record to support the district court's findings that Baker's and Solis's trip to Nevada occurred from June 19 through June 21, 1992, or that K.B. employees conducted work on the Wright Street project during this time. They also contend that the court abused its discretion by allowing Solis to use previously prepared notes to respond to questions regarding work conducted after June 17. Finally, the Borens assert that insufficient evidence exists in the record to support the court's award of damages to K.B. in the amount of $1,475.

### 1. Dates of the Nevada Trip.

Conflicting evidence exists in the record with regard to the dates of the Nevada trip. Both in her desk calendar and in her pocket calendar, Dawneeta Boren had written on the space available for June 18 that Baker and Solis were to be gone through June 23. However, even though Baker stated that he did not recall the dates of the trip, Solis testified that they traveled to Reno on Friday, which was June 19, and returned on Sunday, which was June 21. The party challenging the findings has the burden of showing error, and this Court will review the evidence in the light most favorable to the prevailing party. *McCoy v. McCoy*, 125 Idaho 199, 202, 868 P.2d 527, 530 (Ct.App.1994). Given the record before us, we conclude that the Borens have failed to meet their burden of showing error.

### 2. Witness's Use of Notes.

During the trial, plaintiff's counsel presented Solis with Plaintiff's Exhibit 7, the final bill in the amount of $28,190.17, that K.B. had prepared and sent to the Borens on the Wright Street project in June of 1992. Solis was questioned on each of the items listed in an attempt to determine what work was done, who performed the work, what amounts of the cost constituted labor as compared with materials, and when the work took place. Solis often referred to prepared notes he had brought with him, when responding to these questions. Defense counsel voiced a continuing objection to Solis's use of the notes under I.R.E. 612. The court

overruled the objection and allowed Solis to continue to use his notes.

The Borens now argue that the district court erred by allowing Solis to refer to the notes to refresh his independent recollection of past events because no foundation was laid to show that he had any independent recollection to be refreshed. The Borens also assert that Solis's testimony on the amount of labor hours expended per item on the final bill is irrelevant because these labor estimates were included in K.B.'s March 18 estimate of $52,207.

Idaho Rule of Evidence 612 provides that a witness may use a writing to refresh his or her memory. Idaho appellate courts have not addressed the proper interpretation of I.R.E. 612 since it became effective on July 1, 1985. However, because Federal Rule of Evidence 612 and I.R.E. 612 are very similar, federal case law is relevant and helpful in our analysis of this rule. *State v. Carrasco*, 117 Idaho 295, 298, 787 P.2d 281, 284 (1990); *State v. Woodbury*, 127 Idaho 757, 759, 905 P.2d 1066, 1068 (Ct.App.1995).

 Two items of foundation must be laid before a witness may refer to notes or to other materials to refresh his or her memory. *Hall v. American Bakeries Co.*, 873 F.2d 1133, 1136 (8th Cir.1989). First, the witness must exhibit the need to refresh his or her memory and, second, the witness must confirm that the notes will assist in refreshing his or her memory. *Id.* The witness may not testify directly from the notes, but can use them to assist in recollection. *Id.* The purpose of Fed.R.Evid. 612 is "to promote the search of credibility and memory." Fed. R.Evid. 612, advisory committee's notes (1972). The court must ensure that the witness actually has a present recollection and is not to allow inadmissible evidence to inadvertently slip in for its truth. *See 20th Century Wear, Inc., v. Sanmark–Stardust, Inc.*, 747 F.2d 81, 93 n. 17 (2d Cir.1984). Two safeguards have been devised for this purpose. *Id.* First, the district court has broad discretion in determining whether the witness is truly using the writing to refresh his or her memory, or whether he or she is effectively offering the writing for its truth. *United States v. Rinke*, 778 F.2d 581, 587 (10th

Cir.1985); *United States v. Baratta*, 397 F.2d 215, 222 (2d Cir.1968). *See also 20th Century Wear, supra.* Second, Fed.R.Evid. 612 gives opposing counsel the right to inspect at trial whatever is used to refresh recollection, to cross-examine the witness on it and to introduce relevant portions into evidence. *20th Century Wear, supra.*

On direct examination the following exchange took place with regard to Solis's use of notes to explain Plaintiff's Exhibit 7:

**Q [MR. VARIE—Plaintiff's Counsel]:** Can you tell how these numbers, 1 through 16, on Exhibit 007 were arrived at?

**A [Solis]:** I can do the best I can. These numbers were developed at the time we finished the project.... Kenny relied on me to take care of [the bookkeeping], and I was not very good at bookkeeping. I was good at what I was good at.

**Q:** So you, at the end of the project, you put together—

**A:** We put together these notes.

**Q:** And had you relied on your memory at the time?

**A:** Memory and what we had from the blueprints and a breakdown of all the items that we had done for that project and looking back at the bills we had already billed them [the Borens] for.

**Q:** With regard to No. 1, the garage approach and front steps and sidewalks, is it correct that you billed $450 for that?

**A:** Correct....

**Q:** How did you arrive at the number $450?

**A:** We arrived at that with the material, the concrete that it took to do it, and the labor and hours that it took us to pour it— frame it, pour it, and then finish it, trowel finish the project.

**Q:** So that involves labor and materials?

**A:** Correct.

**Q:** How much is materials?

**A:** At this point, I would have to look at my notes to know how much was material and how much was labor.

**MR. TROUT [Defense Counsel]:** I'm going to have an objection, Your Honor. He can either testify from his knowledge or he

can testify from some business record that is contemporaneous with the time, but this recreation is—there's no foundation for it.

**MR. VARIE:** Your Honor, he's testifying from his memory. The notes are simply to assist him in testifying so that he doesn't have to go through the calculations while on the stand.

**MR. TROUT:** Well, my objection is still the foundation, Your Honor. There's no foundation for anything that shows how much material went into this or shows how many hours—

. . . .

**THE COURT:** Why don't you just give me a chance to look and see what we are going to do. Well, I think that the witness can use about anything he wants to refresh his recollection. So the question of foundation is overruled. If you want to review the notes, you certainly have the opportunity to do so right now if you want.

**MR. TROUT:** I would like to, if they're going to be used.

. . . .

[Recess]

. . . .

**MR. TROUT:** Mr. Solis, do you recall having your deposition taken on the 19th of November of 1993?

**A:** I don't know what date it was; but yes, I recall the deposition.

**Q:** All right, sir. And at the time, you were subject to a subpoena duces tecum for you to bring documents to that deposition which related to the Wright Street project, correct, sir?

**A:** Correct.

**Q:** And you did not have in your possession that day the two pages that you've presented for use here in court, correct?

**A:** That is correct.

**Q:** That's because those pages didn't exist at that point in time?

**A:** Correct.

**Q:** And because, in fact, they were not created until very recently, correct?

**A:** They were created since that time in aid of determining where those numbers came from on that document.

However, on cross-examination, Solis also testified that all of the labor items claimed by K.B. in this case, to which he had testified to from the notes, were "an estimate of what it takes to do those things." He further related that K.B. neither kept, nor maintained, any time records for its employees, with the exception of Rand Copeland, a K.B. employee, whose last date of work on this project appears to have been June 9, 1992.

 We consider the district court's allowance of Solis's use of these notes to be error, but hold that the error is not so prejudicial to the Borens that a reversal is warranted. I.R.E. 103(a). It is clear that the proper foundation for use of these notes was not laid. Furthermore, this is not a situation in which a document was used as a means to refresh a witness's recollection as allowed by Fed.R.Evid. 612.

When Solis was questioned as to the composition of labor expended and materials used for each item listed on the exhibit, he responded, in part, by reading estimated labor-hours from notes he and Baker had prepared after Solis's deposition in November of 1993. No foundation was laid regarding Soli's need to refresh his memory or whether the notes would be of assistance. It appears that when Solis was questioned as to the work conducted on the project, he testified for the most part from the notes he had prepared for trial and not from his own recollection.

Even if a proper foundation had been laid for use of the notes, the notes were not used in a manner allowed by Fed.R.Evid. 612. A witness may use virtually anything to refresh his or her memory, and the materials need not be admissible themselves. *Baratta, supra.* Use of testimonial notes prepared by a witness from records and correspondence specifically to enhance the witness's memory at trial has been permitted, even though prepared by the witness from records and correspondence specifically to enhance the witness's memory at trial. *Bankers Trust Co. v. Publicker Industries, Inc.,* 641 F.2d 1361, 1363 (2d Cir.1981). We note, however, that unlike this case, the witness's use of notes in *Bankers Trust Co.,* was allowed

because the notes encompassed little of the substance of the witness's testimony. Here, Solis relied almost entirely upon his notes to explain the composition of each item on Plaintiff's Exhibit 7. The record shows that neither Solis nor Baker kept individual time cards, a daily diary or made entries into a ledger with this information near in time to when such work was allegedly completed. It is error to allow a witness to testify at trial from prepared notes under the guise of refreshing recollection. *Hall, supra; United States v. Davis,* 551 F.2d 233, 235 (8th Cir. 1977). However, even though Solis provided estimates at best, we conclude that sufficient evidence exists in the record to generally support what work was done, who performed the work, the hourly wage for each of K.B.'s employees, the number of hours it took to complete the work and the amount of materials expended for each item stated in Plaintiff's Exhibit 7 through June 17, 1992.

We hold that the noted errors are not grounds for reversal in this case because the evidence elicited from Solis while he was testifying from his notes was generally cumulative of other properly admitted evidence. Given our conclusion, we do not find it necessary to address whether the labor-hours at issue were actually incorporated in K.B.'s estimate of March 18.

### 3. Amount of Damage Award.

Finally, the Borens assert that insufficient evidence exists in the record to support the court's award of damages to K.B. in the amount of $1,475, under quantum meruit.

■ The remedy of quantum meruit is based upon the principle that "one who provides services should receive the compensation he or she deserves." *Shacocass, Inc., v. Arrington Const. Co.,* 116 Idaho 460, 464, 776 P.2d 469, 473 (Ct.App.1989). It is used to compensate a person who has performed services at the request of another, and recovery is based on an implied-in-fact contract. *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 829, 748 P.2d 410, 413 (Ct.App. 1987). The measure for recovery required for a claim in quantum meruit is the reasonable value of services rendered, not the actual benefit realized and retained. *Peavey v.*

*Pellandini,* 97 Idaho 655, 660, 551 P.2d 610, 615 (1976); *Bischoff, supra.* This is an objective measure and is proven by evidence demonstrating the nature of the work and the customary rate of pay for such work in the community at the time the work was performed. *Peavey v. Pellandini,* 97 Idaho at 659, 551 P.2d at 614.

■ Sufficient testimony exists in the record to support that work was performed generally on the Wright Street project from June 18 through June 22, and what the hourly wage was for each K.B. employee. However, it is difficult to discern from the record exactly what work was performed during this time, the amount of labor-hours expended for the work completed and what amount of that work was attributable to whom. We conclude that the record is insufficient to determine how the district court arrived at the damage award of $1,475.

We therefore hold that the district court erred in awarding damages to K.B. in the amount of $1,475. We remand this case to the district court for further findings of fact on the issue of damages awarded for work K.B. completed on the project from June 18 through June 22, 1992.

### C. Claim of Lien and Lien Waiver.
#### 1. Claim of Lien.

The Borens next claim that the district court erred in upholding the validity of K.B.'s claim of lien for work performed after June 17, 1992. They contend that in order for the claim to be valid, it must have been filed within 60 days of the date that the last substantial work was performed on the Wright Street project. The Borens argue that the record is devoid of any evidence indicating that work occurred after June 17. They further argue that because no work occurred after June 17, K.B.'s claim of lien was untimely because it should have been filed no later than August 17.

K.B. responds that sufficient evidence exists in the record to support the court's finding that substantial performance was completed after June 17. It argues that both Solis and Dawneeta Boren testified to this effect, and that Solis testified to specific

types of work that were conducted. K.B. further argues that even if this Court holds that substantial work was completed on June 17, the claim was still timely filed because K.B. was the "original contractor" within the meaning of I.C. § 45–507, and an original contractor has 90 days, not 60 days, after completion of its work to file a claim of lien.

Mechanic's and other related liens are creatures of statute, and statutory requirements must be substantially complied with in order to perfect a valid lien. *Pierson v. Sewell,* 97 Idaho 38, 41, 539 P.2d 590, 593 (1975). Yet, these lien statutes are to be liberally construed "with a view to effect their objects and promote justice." *Metropolitan Life Ins. Co. v. First Security Bank of Idaho,* 94 Idaho 489, 493, 491 P.2d 1261, 1265 (1971). The purpose of the mechanic's lien statutes is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor. *Weber v. Eastern Idaho Packing Corp.,* 94 Idaho 694, 697–98, 496 P.2d 693, 696–97 (1972), *overruled on other grounds* by *Pierson v. Sewell,* 97 Idaho 38, 45, 539 P.2d 590, 597 (1975).

At the time K.B.'s alleged lien arose in this case, Idaho Code Section 45–507 [3] provided that:

Every original contractor, professional engineer or licensed surveyor claiming the benefit of this chapter must, within ninety (90) days, and every other person must, within sixty (60) days, after the completion of any building, improvement or structure, or after the completion of the alteration or repair thereof, or in case he cease to labor or perform professional services thereon before the completion thereof, then after he so ceases to labor or to perform professional services or after he has ceased to labor or to perform professional services thereon for any cause, or after he has ceased to furnish materials therefor, ... file for record with the county recorder for the county in which such property or some part thereof is situated, a claim containing a statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with the lien, sufficient for identification, which claim must be verified by the oath of the claimant, his agent or attorney, to the effect that the affiant believes the same to be just.

I.C. § 45–507 (1992).

It is well established that trivial work done or materials furnished after the contract has been substantially completed will not extend the time in which a lien claim can be filed under I.C. § 45–507. *Mitchell v. Flandro,* 95 Idaho 228, 231, 506 P.2d 455, 458 (1972); *Gem State Lumber Co. v. Witty,* 37 Idaho 489, 499, 217 P. 1027, 1029–30 (1923). In *Gem State Lumber Co.,* our Supreme Court provided the following analysis:

While the time fixed in the contract for the completion of a building is not controlling as against laborers or materialmen, it has a direct bearing upon the time when the building was to be completed under the contract, so that the time for filing liens for material and labor would begin to run. The statute provides that this time shall be

---

3. Idaho Code § 45–507 was amended by the Idaho Legislature in 1993, to read as follows:

**Claim of lien.**—Any person claiming a lien pursuant to the provisions of this chapter must, within ninety (90) days after the completion of the labor or services or furnishing of materials, or the cessation of the labor, services or furnishing of materials for any cause, file for record with the county recorder for the county in which such property or some part thereof is situated, a claim containing a statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with the lien, sufficient for identification, which claim must be verified by the oath of the claimant, his agent or attorney, to the effect that the affiant believes the same to be just. A true and correct copy of the claim of lien shall be served on the owner or reputed owner of the property either by delivering a copy thereof to the owner or reputed owner personally or by mailing a copy thereof by certified mail to the owner or reputed owner at his last known address. Such delivery or mailing shall be made no later than twenty-four (24) hours following the filing of said claim of lien.

computed from the date of the last item of material furnished, or from the last work performed. The rule very generally prevails that such time begins to run from the substantial completion of the contract, and that new items thereafter added to the account will not extend the time in which to claim a lien or revive a lien already expired. The more difficult question is to determine when under this doctrine the contract has been completed. By the weight of authority, this is to be ascertained by the conditions of the contract, the conduct of the parties with reference thereto, and the surrounding facts and circumstances.

37 Idaho at 499, 217 P. at 1030. *See also Mitchell, supra.* It must then be decided if the work conducted from June 18 through June 22, was a substantial continuation of the work on the contract or a trivial adjustment. The issue as to whether the work is substantial or trivial is fact sensitive, and, thus, we defer to the trial court's characterization of the work on the project.

■ Conflicting testimony exists with regard to the type of work performed and who performed the work. Dawneeta Boren testified that between June 17 and June 22, a minor amount of work was completed on the deck of the house, and that both her husband and Rand Copeland conducted the work. She also represented that her husband completed the majority of this work. Solis testified that during this period of time, K.B. employees installed hardware, bathroom cabinets, base trim, and decking. The district court agreed with Solis on the type of work conducted by K.B. during the time in question. After reviewing the record, substantial evidence exists to support the court's findings. Furthermore, we note that Dawneeta Boren testified that the projects the parties had worked together on in the past were generally completed within 90 days. Given that K.B. began the Wright Street project in late March of 1992, and that the Borens made a number of modifications to the contract, it appears that work conducted by K.B. during this time was in furtherance of the completion of the existing contract. This is not a situation in which materials and services were rendered minimally in an attempt

to prolong the filing date of the claim of lien. Even though the project was not completed within 90 days, K.B. worked consistently from the time it undertook this project through June 22, the day before it was informed by the Borens that K.B. would receive no additional payment for work conducted.

We conclude that the district court did not err in finding that work was substantially completed on June 22, 1992, nor did the court err in holding that K.B.'s claim of lien was valid. Given our holding, we do not reach the issue of whether K.B. acted as the "original contractor" within the meaning of I.C. § 45–507.

## 2. Waiver of the Lien.

■ The Borens also contend that the district court erred in holding that only K.B.'s claims as of June 17, 1992, were barred by the lien waiver. They argue that the court should have found that all of K.B.'s claims were waived because no evidence exits to support that substantial work was performed by K.B. after June 17. Because we agree with the district court that substantial performance was not completed until June 22, we do not reach this issue. The lien waiver unambiguously released all of K.B.'s lien rights against the property and acknowledged payment in full for labor and material costs as of June 17. The waiver does not release the Borens of any labor and material cost claims alleged by K.B. subsequent to June 17.

## 3. Waiver of Subcontractors' Claims.

■ The Borens next assert that the district court erred in holding that the lien waiver signed by K.B. did not hold the Borens harmless from all of the subcontractors' claims including those of Franklin Building Supply, Power Electric, Inc., and Idaho Door Supply.

The district court found that prior to the Wright Street project, the parties had established a course of dealing related to the Borens' remodeling projects. The court held that K.B. had been the general contractor on the projects, and had been given "control

over direction of the projects, selection of most sub-contractors, expenditures, and payment to sub-contractors. . . ." The court also found that the Wright Street project was substantially different from the prior projects because the Borens had decided to remodel the residence and make it their personal home. The court stated that:

> [w]hen the [Wright Street] project began in March 1992, KB was introduced to the other contractors as the project manager, but it soon became apparent that the Borens, especially Mrs. Boren, were managing the project, directing all the contractors, and making direct payments to the contractors. KB did not control or direct the other contractors, and it had no control over costs, other than costs directly associated with its own work.

Warren McQueary of Power Electric testified that his walk-through of the residence was conducted by Dawneeta Boren, and that she was directing his work. In addition, evidence exists showing that the Borens had paid several suppliers and subcontractors directly, including Idaho Door Supply. Furthermore, Baker testified that K.B. was under no obligation to pay any of the subcontractors, and that K.B. had informed the Borens of such when the Borens took control of the project. Substantial, albeit conflicting, evidence exists in the record to support the district court's conclusion that the claim of lien signed by K.B. does not hold the Borens harmless for obligations the Borens owed to Franklin Building Supply, Power Electric Inc., and Idaho Door Supply.

We conclude that the district court did not err in holding that the lien waiver signed by K.B. did not hold the Borens harmless from the claims of the noted subcontractors.

#### 4. Slander of Title.

The Borens claim that the district court erred in holding that the claim of lien filed by K.B. did not slander their title to the Wright Street property. They also contend that the court erred in denying them damages for slander of the property's title.

In order to maintain a cause of action for slander of title, the claimant has the burden of showing: (1) uttering or publishing of slanderous statements; (2) when the statements were false; (3) with malice; and (4) resulting in special damages. *Matheson v. Harris*, 98 Idaho 758, 760–61, 572 P.2d 861, 863–64 (1977); *Sun Valley Land and Minerals, Inc. v. Burt*, 123 Idaho 862, 869, 853 P.2d 607, 614 (Ct.App.1993). The district court concluded that K.B. had a valid lien, and we agree although the amount of the lien must be recalculated by the trial court on remand. The statements in the claim of lien were not shown to be published with malice. We therefore hold that the district court did not err in holding that the claim of lien did not slander the Borens' title.

#### D. Quantum Meruit.

On cross-appeal, K.B. claims that the court erred in refusing to award damages to K.B. under the theory of quantum meruit in the amount of $25,613.38.

K.B.'s lien waiver released all of K.B.'s lien rights against the Wright Street property for work performed prior to June 17, 1992, and acknowledged payment in full of the $25,-613.38 claim. This argument is therefore rejected.

#### E. Attorney Fees.

The Borens claim that they are entitled to attorney fees both at trial and on appeal as the prevailing party under I.C. § 12–120(3). K.B. requests attorney fees on appeal pursuant to I.C. §§ 12–120(3) and 12–121.

Idaho Code § 12–120(3) generally mandates an award of attorney fees to the prevailing party on appeal as well as at trial. *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992); *Spidell v. Jenkins*, 111 Idaho 857, 861, 727 P.2d 1285, 1289 (Ct.App.1986). We agree with the district court that neither party prevailed at trial. We also believe that neither party prevailed on appeal. Hence, we will not award attorney fees under this statute.

An award of attorney fees may be awarded to the prevailing party on appeal pursuant to I.C. § 12–121 if this Court finds

"that the case was brought, pursued or defended frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1); *Bott, supra; Thompson v. Pike,* 122 Idaho 702, 707, 838 P.2d 305, 310 (Ct.App.1991). Based on the record below and the arguments made on appeal, we cannot say that the appeal was brought frivolously or unreasonably or that it lacked foundation. Thus, no award of attorney fees is appropriate on appeal.

Finally, the Borens claim that had the district court properly dismissed the claim of lien, they would have been entitled to an award of attorney fees pursuant to I.C. § 45–513. Given our analysis, this issue is moot.

## V. CONCLUSION

Accordingly, we affirm the district court's judgment, but the case is remanded to the court for entry of findings of fact as to the value of the work done from June 18 through June 22, 1992. Once such findings are made, the court is to redetermine the award of damages to K.B. under the theory of quantum meruit.

No costs or attorney fees are awarded on appeal because neither party prevailed. Each party is to bear its own costs.

LANSING and PERRY, JJ., concur.