47 P.3d 772

**SAINSBURY CONSTRUCTION CO., INC.,** an Idaho corporation dba SCC Excavation, Plaintiff–Respondent,

v.

**Shawn M. QUINN and Angela D. Quinn,** husband and wife, Defendants– Appellants,

and

**Family Home Mortgage Corp.,** an Oregon corporation; **Dime Mortgage, Inc.,** a New York corporation and **North Idaho Title Insurance Inc.,** an Idaho corporation. Defendants.

No. 27197.

Court of Appeals of Idaho.

April 8, 2002.

Review Denied June 5, 2002.

Rude, Jackson & Daugharty, Coeur d'Alene, for appellant. Paul W. Daugharty argued.

Evans, Keane, Kellogg, for respondent. Charles L.A. Cox argued.

GUTIERREZ, Judge.

This case involves a dispute over payment for the construction of a house. At the conclusion of a court trial, the district court found that appellants Shawn M. Quinn and Angela D. Quinn (Quinns) breached their express contract with respondent Sainsbury Construction Company Inc. (SCC) and en-

tered an amended judgment in favor of SCC in the amount of $22,423.62 plus prejudgment interest and attorney fees and costs of $18,345.40. The Quinns appeal, arguing that the district court erred when it determined that the express oral agreement made between SCC and the Quinns did not merge into a warranty deed and in awarding prejudgment interest, attorney fees and costs to SCC. We affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In late 1995, SCC, an Idaho corporation in the construction business, hired Shawn Quinn as a heavy equipment operator. In 1996, the Quinns decided that they wanted to purchase a five-acre parcel in Post Falls and construct a house on it. The Quinns were unable to secure a construction loan to purchase the parcel and finance the construction of the house so they approached Tom Sainsbury, corporate president and owner of SCC, in April 1997 for assistance. SCC agreed to assist the Quinns by purchasing the building lot, and allowing the Quinns to use SCC's credit and accounts to obtain construction materials and subcontractor labor. In exchange, SCC was to receive reimbursement of its actual costs plus a 5 percent fee to cover SCC's internal overhead expenses. SCC did not agree to build the Quinns' house for them or act as the general contractor in the construction of the house. The agreement between SCC and the Quinns was not reduced to writing.

The parties created a working budget and the Quinns stated that they would do all the roofing, labor, subcontracting supervision, site preparation and cleanup, plumbing, exterior concrete, and septic system installation to keep costs within the working budget. Additionally, Angela Quinn agreed to solicit bids from subcontractors and material suppliers as she was especially skilled in obtaining favorable deals and price reductions. These terms were also not reduced to writing.

During the construction process, the Quinns were unable to fully perform the role of general contractor and SCC assumed some of those duties, hiring subcontractors to finish work left undone by the Quinns. Also during the construction, the Quinns requested and received several significant changes in the materials that differed from the working budget. On August 18, 1997, Tom Sainsbury and the Quinns conducted a walk-through of the nearly finished house and Sainsbury informed the Quinns that they had already exceeded their budget by approximately $1,800. Sainsbury also warned the Quinns to expect more bills for unpaid expenses in the future. The final inspection of the house occurred on or about September 5 and the Certificate of Occupancy was issued on or about September 15.

In order to take advantage of an interest rate that expired on September 22, the Quinns asked SCC to close on September 15. At the closing, SCC issued a warranty deed to the Quinns conveying the real property with improvements free and clear of all encumbrances except current taxes and easements of record in consideration for $167,673.14. Prior to the closing, SCC told the Quinns to expect bills for labor and material costs incurred in September and October. The Quinns orally agreed to pay those bills. Tom Sainsbury testified that SCC relied on the Quinns' promise to pay those outstanding bills in proceeding to closing.

After the closing, SCC sent the Quinns bills totaling approximately $17,000 for unpaid labor and material costs. The Quinns refused to pay SCC any money in addition to that received at closing on September 15. On December 23, SCC filed a claim of lien on the property stating that SCC had furnished materials and labor in the just and reasonable value of $30,568.47 from April 5, 1997 to September 24, 1997. On June 12, 1998, SCC filed a complaint against the Quinns for breach of contract, restitution, unjust enrichment, *quantum meruit* and foreclosure of its claim of lien. On January 19, 2000, SCC amended its complaint to allege a count of fraud against the Quinns. The matter was tried before the district court. At the conclusion of the trial the district court orally pronounced judgment in favor of SCC. On July 7, the district court entered its written findings of fact and conclusions of law. The

district court's conclusions of law in part state:

2. In light of the Court's finding of an express contract between the parties, the Court deems [SCC's] additional equitable claims for relief to be inapplicable.

3. The parties' contractual obligations did not merge into the warranty deed delivered by SCC on September 15, 1997.

4. By virtue of having delivered its warranty deed to the Quinns on September 15, 1997, SCC waived and relinquished its right to secure its contractual claim with a mechanics' lien for all work and materials provided to Quinns prior to September 15, 1997, but SCC did not waive its right to pursue the contractual claim itself.

5. Quinns are in breach of their express oral contract with SCC.

6. As the direct and proximate result of the Quinns' breach, SCC has been damaged in the amount of $22,423.62.

Additionally, the district court found that SCC was the prevailing party and entitled to attorney fees, prejudgment interest and costs. Also, on July 7, the district court entered a written judgment against the Quinns in the amount of $22,423.62 plus prejudgment and postjudgment interest. On December 5, the district court entered an amended judgment awarding SCC the amount of $22,423.62 plus prejudgment interest and attorney fees and costs of $18,345.40. The Quinns filed this timely appeal.

## II.

### STANDARD OF REVIEW

■ It is well established that appellate review of a lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Baker v. Boren*, 129 Idaho 885, 890, 934 P.2d 951, 956 (Ct.App.1997). The task of weighing evidence and finding facts is within the province of the trial court and we will not set aside findings made by the trial court unless they are clearly erroneous. *Id.* Further, we will give due regard to the opportunity of the trial judge to weigh conflicting testimony and to judge the credibility of witnesses. *Id.* We must accept the trial court's findings of fact if they are supported by substantial, competent though conflicting evidence. *Id.*

## III.

### DISCUSSION

**A. The District Court Did Not Err When It Determined That The Quinns' Contractual Obligation To Pay SCC For The Costs Of Constructing The Home Did Not Merge Into The Warranty Deed.**

■ The Quinns argue that the district court erred in determining that their contractual obligations to pay SCC did not merge into the warranty deed. The Idaho Supreme Court, in *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966), explained the doctrine of merger as follows:

It is a well established rule of law that prior stipulations are merged in the final and formal contract executed by the parties, and this rule applies to a deed or a mortgage based upon a contract to convey. When a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties.

. . . .

There is an exception to the rule stated, which is that the contract of conveyance is not merged upon execution of a deed where under the contract the rights are conferred collaterally and independent of the deed; there being no presumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction. Where the right claimed under the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract covering the same subject-matter*

*cannot be shown as against the provisions of the deed.*

*Id.* at 382–83, 414 P.2d at 884 (quoting *Continental Life Ins. Co. v. Smith,* 41 N.M. 82, 64 P.2d 377 (1936)). The *Jolley* court continued:

It seems to be well settled that ordinarily the provisions of an executory contract for the sale of land and all prior negotiations leading up to it are merged in a subsequent deed. (citing cases.)

It will be presumed that it was the desire of the parties to consider the deed as the final expression of their mutual intentions. If the covenants in the contract relate to the conveyance, or inhere in the very subject-matter with which the deed deals, they are merged in the deed and any reference to them in the deed will be considered as final, even though the deed contradict the contract. (citation)

To the general rule that there is a merger of prior covenants and agreements in the deed, there is a well-recognized exception. Where the covenants in the contract do not relate to the conveyance, but are collateral to and independent of the conveyance, they are not merged in the deed, in so far as the deed is only a part performance of the contract. (citations)

A grantee may accept a deed as full performance of a prior contact, even where it is not such; but whether a deed has been so accepted is, in the final analysis, a matter of intention. It would seem that where the covenants are of this nature— that is, collateral to the covenants of conveyance—there is no presumption that either party intended to give up the benefit of the covenants of which the conveyance is not a performance. (citations) In such a case the contract is kept alive, and an action on it may be brought in case of its breach, independent of any possible recovery on the warranties of the deed.

*Id.* at 383–84, 414 P.2d at 885 (quoting *Christiansen v. Intermountain Assn.,* 46 Idaho 394, 267 P. 1074 (1928)).

In the instant case, the district court made the following finding of fact:

The crux of the transaction between the parties was not the conveyance of the land and house to the Quinns by SCC, but rather that SCC would assist the Quinns in the construction of their house and receive reimbursement of its costs plus 5%. The transaction of the property at closing on September 15, 1997 was incidental to, and did not conclude, the parties' mutual obligations pursuant to their verbal agreement.

Based on this finding of fact, and applying the law from *Jolley,* the district court concluded that the parties' contractual obligation did not merge into the warranty deed delivered by SCC on September 15, 1997. The district court further concluded that the express contract between SCC and the Quinns remained viable and SCC was entitled to pursue the breach of contract claim. We agree.

Upon independent review of the record, we conclude that there was substantial and competent evidence to support the district court's findings of fact and that the district court correctly applied the law based upon those findings. The district court heard testimony from Tom Sainsbury that SCC and the Quinns agreed to an express oral contract that SCC would assist the Quinns in building their house and take costs plus 5 percent in return. Sainsbury testified that SCC did not agree to build the Quinns' house for them or act as general contractor in the construction of the house as that term is commonly understood within the construction industry. Additionally, Sainsbury testified that during the August 18, 1997, walk-through of the house, he notified the Quinns that there would be outstanding bills due after the September 15 closing and that the Quinns agreed to pay those bills. Taken in totality, the evidence supports the district court's finding that the crux of the contract was for SCC to assist the Quinns in building their house, not for SCC to build a house and convey it to the Quinns for a fixed price. As such, we hold that the covenants in the express contract between SCC and the Quinns were collateral to and independent of the conveyance and therefore did not merge into the warranty deed.

### B. The District Court Did Not Err When It Determined That SCC Was The Prevailing Party And Awarded Prejudgment Interest, Attorney Fees and Costs to SCC.

#### 1. Prevailing party

■ Idaho Code Section 12–120(3) provides that an award of attorney fees to the prevailing party is mandatory in various types of civil actions including, *inter alia*, actions to recover on an open account, actions to recover on contracts for the sale of goods, and actions arising out of any commercial transaction. It is not disputed that this action falls within the purview of this statute. The Quinns argue that the district court erred in determining that SCC qualifies for such an award as a prevailing party.

■ The determination of whether a litigant is the prevailing party is committed to the discretion of the trial court. I.R.C.P. 54(d)(1)(B); *Caldwell v. Idaho Youth Ranch, Inc.*, 132 Idaho 120, 127, 968 P.2d 215, 222 (1998); *Sanders v. Lankford*, 134 Idaho 322, 325, 1 P.3d 823, 826 (Ct.App.2000). On appellate review, we examine the trial court's decision to determine whether the trial court correctly perceived the issue as one of discretion, acted within the outer boundaries of its discretion and consistently with applicable legal standards applicable to the specific choices available to it, and reached its decision by an exercise of reason. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991); *Jerry J. Joseph C.L.U. Ins. Assoc., Inc. v. Vaught*, 117 Idaho 555, 557, 789 P.2d 1146, 1148 (Ct.App.1990).

■ Idaho Rule of Civil Procedure 54(d)(1)(B) provides the three principal factors that the trial court must consider when determining which party, if any, prevailed: (1) the final judgment or result obtained in relation to the relief sought; (2) whether there were multiple claims or issues between the parties; and (3) the extent to which each of the parties prevailed on each of the claims or issues. The result obtained may be the product of a court judgment or of a settlement reached during the course of litigation.

*Jerry J. Joseph C.L.U. Ins. Assoc., Inc.*, 117 Idaho at 557, 789 P.2d at 1148.

The Quinns argue that the district court erred in determining that SCC was the prevailing party. The Quinns contend that because the district court dismissed SCC's claims for restitution, unjust enrichment and *quantum meruit*; fraud; and foreclosure of lien, they successfully defended against three of SCC's four claims, therefore making it inappropriate to deem SCC the prevailing party. We disagree. The district court determined that the Quinns breached an express contract with SCC and awarded SCC the full amount owing on the contract. Therefore, it was unnecessary for the district court to address the additional claims for relief and they were properly dismissed. We conclude that the district court considered the factors of I.R.C.P. 54(d)(1)(B) and properly exercised its discretion in determining that SCC was the prevailing party.

#### 2. Attorney fees and costs

The Quinns do not challenge on appeal the amount of attorney fees as ordered, only that SCC was not entitled to fees. Idaho Code Section § 12–120(3) provides that a court shall award attorney fees to the prevailing party in any civil action to recover on a contract for services "and in any commercial transaction...." It is undisputed that SCC brought this civil action to recover on a contract for a commercial transaction. Because we held above that the district court appropriately determined that SCC was the prevailing party, it was proper for the district court to enter judgment for reasonable attorney fees and costs.

#### 3. Prejudgment interest award

■ It is well settled law in Idaho that prejudgment interest may be awarded where the amount of liability is liquidated or capable of ascertainment by mere mathematical process. *Bouten Const. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 762, 992 P.2d 751, 757 (1999); *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 920, 478 P.2d 298, 300 (1970). Idaho Code § 28–22–104 allows for an award of prejudgment interest for money due by express contract or when it becomes

due. In a breach of contract action, interest may be awarded from the date of the breach when the amount upon which the interest is to be based is mathematically and definitely ascertainable. *Ervin Constr. Co. v. Van Orden,* 125 Idaho 695, 704, 874 P.2d 506, 515 (1993); *Barber v. Honorof,* 116 Idaho 767, 770, 780 P.2d 89, 92 (1989).

In the instant case, the district court made the following findings of fact:

. . . .

26. SCC recorded its Claim of Lien against the Quinns' real property in Kootenai County on December 23, 1997 as instrument number 1518452.

27. SCC incurred a total of $181,044.53 in out of pocket costs and expenses on the Quinn project that are recoverable from the Quinns pursuant to the terms of the parties' agreement. SCC is also entitled to recover its 5% contractor's fee in the amount of $9,052.23, for a total under the contract of $190,096.76.

28. SCC previously received a total of $167,673.14 from the Quinns, leaving a total presently due in the amount of $22,423.62.

29. SCC's damages were liquidated and capable of ascertainment by mathematical calculation.

From these findings, the district court concluded that SCC was entitled to an award of prejudgment interest from December 23, 1997. At trial, SCC presented Plaintiff's Exhibits 13–15 which detailed all of the expenditures made by SCC on behalf of the Quinns. Accordingly, the record supports the district court's findings that SCC's damages were liquidated and capable of ascertainment by mathematical calculation. Therefore, it was proper for the district court to award prejudgment interest to SCC.[1]

**C. SCC Is Awarded Attorney Fees On Appeal Pursuant To I.C. § 12–120.**

Both parties have also requested attorney fees on appeal. The mandatory attorney fee provisions of I.C. § 12–120 govern on appeal as in the trial court. *Sanders,* 134 Idaho at 327, 1 P.3d at 828; *Cheney v. Smith,* 108 Idaho 209, 211, 697 P.2d 1223, 1225 (Ct. App.1985). This Court has held that the statute applies if the appeal is concerned with the entitlement to an award below. *Building Concepts, Ltd. v. Pickering,* 114 Idaho 640, 645, 759 P.2d 931, 936 (Ct.App. 1988); *Spidell v. Jenkins,* 111 Idaho 857, 861, 727 P.2d 1285, 1289 (Ct.App.1986). We deem the issue presented here to be one of entitlement, and SCC has prevailed on appeal. Accordingly, SCC is awarded reasonable attorney fees to be determined pursuant to Idaho Appellate Rule 41.

## IV.

## CONCLUSION

The district court's amended judgment in favor of SCC is affirmed. Costs and attorney fees on appeal are awarded to SCC.

Chief Judge PERRY and Judge Pro Tem WESTON concur.

---

1. Based upon our disposition of the case it is unnecessary to address the final issue raised by the Quinns in their brief on appeal, that is, that they are entitled to interest on the monies they paid to SCC to satisfy the amended judgment pending the outcome of this appeal.