## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43822

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, November 2017 Term** |
| | ) | |
| **v.** | ) | **2018 Opinion No. 25** |
| | ) | |
| **DAVID LEON JOHNSON,** | ) | **Filed: March 16, 2018** |
| | ) | |
| **Defendant-Appellant.** | ) | **Karel A. Lehrman, Clerk** |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho in and for Minidoka County. Hon. Michael R. Crabtree, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Elizabeth A. Allred argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

BEVAN, Justice.

A jury found David Leon Johnson ("Johnson") guilty of two counts of lewd conduct with a minor child under sixteen. Johnson appeals, arguing that the district court erred in multiple ways and that his convictions should be vacated. We affirm.

### I. FACTS AND PROCEDURAL BACKGROUND

On August, 24, 2005, Johnson was indicted on three counts of lewd conduct with a minor child under sixteen pursuant to Idaho Code section 18-1508. He allegedly committed these offenses against his daughter ("A.J."), who was between six and seven years old at the time of the charged conduct. The first two counts allegedly occurred over the first weekend of spring break in 2004. During this period of time, Michelle Johnson (his former wife) purportedly left town to visit her parents, leaving A.J. behind with Johnson. A.J. testified that while she was home alone with Johnson

1

he molested her on two occasions. The third count alleged that Johnson molested A.J. over the Memorial Day weekend of 2005.

Johnson was tried on these allegations in July 2006 (the "first trial"), wherein he was convicted as to the first two counts and acquitted of the third. Johnson appealed his judgment of conviction to this Court, alleging the district court erred by admitting into evidence testimony that he molested his little sister when he was a teenager in contravention of Idaho Rule of Evidence 404(b). *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010). We agreed and found this error was not harmless, vacated his convictions, and remanded his case for a new trial. *Id.* at 671, 227 P.3d at 925.

In June of 2011 a new trial was held, with the jury again convicting Johnson of the same two counts he was convicted of in his first trial. Johnson was sentenced to a unified sentence of 15 years, with 5 years fixed, for each count. No notice of appeal was filed; however, after a successful post-conviction proceeding, a superseding judgment of conviction and order of commitment was entered allowing Johnson to appeal. A timely notice of appeal was then filed from the superseding judgment of conviction.

Johnson advances several arguments in this appeal, namely that the district court erred by: (1) informing the jury pool about Johnson's first trial, depriving him of a fair trial; (2) denying his motion for mistrial after a detective improperly commented on Johnson's invocation of his right to remain silent; (3) denying his motion for a mistrial after a witness's memory was improperly refreshed; and (4) denying his motion for mistrial after the State committed a discovery violation. Johnson further alleges that the State committed prosecutorial misconduct by the detective commenting on Johnson's invocation of his right to remain silent at trial. If these alleged errors are individually harmless, Johnson also argues that when combined they amount to cumulative error.

## II. ANALYSIS

**A. The district court did not create an implied bias among the jury, depriving Johnson of a fair trial, by informing the jury there was a prior trial in which this Court reversed and remanded his case for a new trial.**

Johnson argues he was denied due process and the right to a fair trial when the district court informed potential jurors there had been a previous trial in which his case was reversed and

2

remanded by this Court. We hold this comment did not create an implied bias among the potential jurors that deprived Johnson of a fair trial.

The parties and the court met for a final pre-trial conference on June 6, 2011. During the conference Johnson's counsel requested that a jury questionnaire be used to aid in selection of the jury, and counsel submitted a proposed questionnaire to the court on June 7, 2011. On June 16, the district court entered a Minute Order Regarding Preliminary Jury Selection Proceedings (Minute Order) which informed counsel that the court would conduct "preliminary jury selection proceedings" and would "give verbal preliminary instructions and information about the charges in th[e] case." The court attached a written copy of the court's intended comments as Exhibit A to the Minute Order. The certificate of service on the Order indicates that it was served on counsel by facsimile on June 16. The Minute Order also allowed the parties to object to the court's intended comments by June 21; however, Johnson's counsel failed to object.

The court summoned jurors to complete the questionnaires, gave them preliminary instructions, and read them the information contained on Exhibit A, which included the following language: "There was a prior trial in this case in 2006. Following an appeal, the Idaho Supreme Court reversed and remanded the case to this court for a new trial." Defense counsel was not present during these hearings and therefore lodged no contemporaneous objection to the court's reading of the instruction.

At the start of trial Johnson filed a motion in limine requesting an order from the district court prohibiting the State from "[m]aking any reference to a prior trial in this case" and requesting, that to the extent that witnesses need to refer to the prior trial, that it be referred to as a "previous hearing in this case." The court immediately informed defense counsel that the jury panel had already been told that there was a prior trial and appeal during the jury questionnaire hearings, in the language of Exhibit A. Johnson moved to vacate the trial and summon new jurors who would not be informed of the prior trial. The trial court denied the motion to vacate, but did order that the parties not reference the prior trial in the presence of the jury, other than by reference to the "prior proceeding."

Johnson now contends that the court reading this statement to the jury set a tone of prejudice for the jury's first impression of the case; thus, the jury pool was impermissibly tainted and Johnson's constitutional right to be tried before an impartial jury was infringed.

3

1. Standard of Review.

As noted, the court provided counsel with its intended instruction containing the allegedly offensive statement in advance of trial. Johnson's counsel failed to timely object, either in writing or during the jury questionnaire process. Therefore, this Court will review Johnson's alleged error on the basis of a fundamental error standard. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010).

Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error:

> (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id.* at 229, 245 P.3d at 980.

2. The district court's comment to the jury about Johnson's prior trial and appeal did not constitute fundamental error.

Johnson argues the district court's comment regarding his prior trial is the equivalent of informing the jury that he was previously convicted, thus creating an implied bias among the jury violating his right to a fair trial. The question presented is whether the "mention of a prior trial and appeal is so extremely and inherently prejudicial that it would create an implied bias where the jury is not susceptible to rehabilitation through further questions." *Id.* In determining whether such an extreme situation exists, each case must turn on its own facts. *Id.* at ___, 399 P.3d at 814.

> As this Court has noted many times, the right to a fair trial before an impartial jury is fundamental to both the U.S. Constitution and the Idaho Constitution. The Supreme Court of the United States has noted: It is elementary that a fair trial in a fair tribunal is a basic requirement of due process, and this Court has stated that the due process requirements of the Idaho Constitution require a trial by a fair and impartial jury. The impartiality of a juror may be challenged for actual or implied bias. Actual bias deals with the specific state of mind of an individual juror and is proved by questioning the juror as to whether he or she can serve with entire impartiality. Implied bias, however, conclusively presumes bias as a matter of law based on the existence of a specific fact.

4

*State v. Lankford*, 162 Idaho 477, ___, 399 P.3d 804, 812 (2017) (internal quotations and citations omitted).

Idaho Code section 19-2020 provides a criminal defendant can strike a juror for implied bias on any one of nine enumerated grounds and "for no other." We have consistently declined to expand the scope of Idaho Code section 19-2020 to include other grounds. *Id.* at ___, 399 P.3d at 814 (listing prior decisions). "Many courts, including the Supreme Court of the United States, have held that the fact that a juror knew that the defendant has been found guilty or convicted by a previous jury for the same crime creates an implied bias and constitutes fundamental error because it is inherently prejudicial." *Id*. at ___, 399 P.3d at 812. This Court has not yet addressed this issue, *id.* at ___, 399 P.3 at 813 (declining to address the issue), and this case does not require that we do so, because here, as in *Lankford*, the trial court did not inform the jury that the defendant had been found guilty, or that he was convicted in the prior trial.

The statement made by the trial court in *Lankford* was very similar to the district court's statement here. The *Lankford* trial court made the following statement to the jury during the course of voir dire:

> There was a prior trial in Idaho County in 1984 for the offenses for which he is now charged. And an Appeals Court held that Mr. Lankford was not effectively represented and that his trial was therefore unfair.

*Id*. This Court held this statement was not the equivalent of disclosing a prior conviction. *Id.*

We hold similarly. Commenting that a case was reversed and remanded is not equivalent to disclosing a prior conviction.

In *Lankford*, we held the disclosure of a prior trial and appeal did not create an implied bias because: (1) The district court did not reveal the outcome of the previous trial but only stated there had been a previous trial and appeal; (2) There was a discussion between counsel and the court about how to handle the issue of the previous trial and defense counsel did not object at the time the court made the statement; and (3) The court properly questioned the jurors whether their knowledge of the previous trial would cause them to have actual bias against the defendant and properly instructed the jurors that they must presume the defendant innocent regardless of his prior trial. *Id.* These factors are not exhaustive and their weight depends on the particular facts of a case. *Id.* However, given the factual similarities between the case at bar and *Lankford*, we find these three factors instructive in deciding this case.

5

a. The district court did not reveal the outcome of the previous trial but only stated there had been a previous trial and appeal.

The district court never mentioned a prior conviction or guilt. "Idaho law clearly distinguishes between the mention of a prior trial and a prior conviction." *Id.* at ___, 399 P.3d at 813 (citing *State v. Watkins*, 152 Idaho 764, 766, 274 P.3d 1279, 1281 (Ct. App. 2012). This Court has stated:

> The fact that a defendant is being retried, without reference to a defendant's conviction or guilt, is no more prejudicial than the fact that the defendant has been held to answer to a criminal charge. Such prejudice is not a basis for relief because it is neither extreme nor unfair, but rather is an inevitable part of the criminal process.

*Id.* at ___, 399 P.3d at 814. *See also Watkins*, 152 Idaho at 766, 274 P.3d at 1281 (Ct. App. 2012) (mention of a "prior trial" and the "appeals court" was not the disclosure of a conviction requiring reversal). Applying these precedents, we find that the trial court's statement did not lead to implied bias among the potential jurors in this case.

b. There was a discussion between counsel and the court about how to handle the issue of the previous trial and defense counsel did not object.

Johnson's counsel failed to timely object to the district court's comments. Counsel was further given additional opportunities to ameliorate the problem through proposing a curative instruction or directing voir dire to the potential jurors regarding the prior trial. Counsel chose neither approach.

In denying Johnson's motion to strike the jury panel, the district court attempted to alleviate further possible prejudice by instructing both parties to refer to the prior trial as "a prior proceeding or a prior hearing" in the presence of the jury. However, the court chose not to give any additional instruction to the jury after both counsel felt such a move could bring additional prominence to the issue and further taint the process. Even so, Johnson's counsel continued to maintain that the curative instruction was not enough and the entire venire should be stricken. We hold the trial court's approach was acceptable, and did not amount to fundamental error.

As noted, the district court concluded that an instruction addressing the prior trial would likely draw attention to the issue and therefore add to the potential prejudice. Instead, it gave general instructions emphasizing the presumption of innocence prior to the start of voir dire, and again after the jury was sworn in. The court further instructed the jury to decide the case solely on the evidence

presented in the courtroom. While the district court's granting a more specific instruction to disregard the comment may have given some protection from potential bias, the court's decision to avoid the risk, particularly at the urging of both counsel, was not erroneous. *Cf. State v. Hatton*, 95 Idaho 856, 860, 522 P.2d 64, 86 (1974) ("Where evidence is admissible for one purpose and inadmissible for another, the district court's failure to give a limiting instruction is not in itself a reversible error where such instruction was not requested.").

Johnson's counsel also had the opportunity to explore and/or rehabilitate the potential bias held by the jurors by conducting detailed voir dire regarding the issue. *State v. Laymon*, 140 Idaho 768, 771, 101 P.3d 712, 715 (Ct. App. 2004) ("[T]he purpose of voir dire is to discover which, if any, of the potential jurors are unable to meet the demands such service requires."). As noted by the United States Supreme Court, the "long held . . . remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove *actual* bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982). Such bias was not self-evident on the record before the trial court, and counsel's decision not to question the jurors about the prior trial, albeit tactically supportable, precludes a finding that the jury panel was impliedly biased in this case. There is a "strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *State v. Abdullah*, 158 Idaho 386, 418, 348 P.3d 1, 33 (internal quotations and citations omitted). Given such opportunities, which counsel chose not to explore, the district court's advising the jurors of the prior proceedings did not create an extreme situation where "the jury is not susceptible to rehabilitation through further questions." *Lankford*, 162 Idaho at ___, 388 P.3d at 814. Therefore, we hold these facts do not constitute fundamental error.

3. Even if Johnson could establish an implicit bias, he waived any claim that the jury was biased when he passed the jury for cause at the conclusion of voir dire.

This Court has held passing a jury for cause at the conclusion of voir dire indicates a criminal defendant is satisfied with the final jury selected and waives any claim that the jury was biased or not impartial. *State v. Pratt*, 160 Idaho 248, 371 P.3d 302 (2016). In *Pratt*, during voir dire a prospective juror stated the following when asked if his relationship with the defendant would affect his ability to serve on the jury: *"I don't know about this case, but I got in trouble awhile back and [for the] same thing that he's in trouble . . . for. That's how I know him." Id.* The State then moved to excuse the prospective juror for cause. *Id.* After this juror was excused, the defendant moved for a mistrial arguing the entire jury panel was tainted by the excused juror's answer and could not serve

7

impartially. *Id*. The district court denied the motion for mistrial. *Id.* The defendant then conducted his voir dire of the prospective jurors, and at its conclusion passed the jury for cause. *Id.* On appeal this Court held that by passing the jury for cause the defendant "waived any claim that the jurors were biased." *Id*.

Johnson's counsel did examine the potential jurors during voir dire to determine if they could serve impartially. He asked numerous questions regarding the presumption of innocence and the standard of proof in a criminal case. Every juror questioned stated they understood the presumption of innocence and that the State needed to establish its case beyond a reasonable doubt. He asked additional questions including: if the jurors expected Johnson to testify; if they had ever been accused of something they did not do; if they believed children were entitled to softer treatment on cross-examination; if they believed children are more likely to tell the truth than adults; and would they want someone like themselves on a jury for their own trial. At the conclusion of voir dire Johnson's counsel passed the jury for cause. By passing the jury for cause, Johnson indicated satisfaction with the final jury selected and waived any claim the jury was biased against him on appeal.

## B. The district court did not err in denying Johnson's motion for mistrial after a detective impermissibly commented on Johnson's invocation of his right to remain silent at trial.

Johnson argues the district court erred in denying his motion for a mistrial when a detective commented on his right to remain silent. We hold the district court did not commit reversible error when the court sustained Johnson's objection, granted a curative instruction, and denied the motion for mistrial.

1. <u>In a criminal case, the applicable standard of review for a denial of a motion for mistrial is one of reversible error.</u>

"A mistrial may be declared on motion of the defendant when there occurs during the trial, either inside or outside the courtroom, an error or legal defect in the proceedings, or conduct that is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). In reviewing a district court's denial of a motion for mistrial in a criminal case, the question

> is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion

for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003); *See also Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016) (declining to extend the reversible error standard to denials of mistrial in civil cases). Where a criminal defendant shows a reversible error based on a contemporaneously objected-to constitutional violation "the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict." *Perry*, 150 Idaho at 227, 245 P.3d at 979 (2010); *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).

2. <u>The district court did not commit reversible error when it sustained Johnson's objection, granted a curative instruction, and denied the motion for mistrial.</u>

Johnson's counsel moved for a mistrial during the direct examination of a detective. The detective testified generally about his investigation in the case before Johnson was arrested. When asked by the State whether he had interviewed anyone else in his investigation, the detective responded, "Tried to interview Mr. Johnson." Johnson objected alleging that the detective's answer impermissibly commented on his right to remain silent. Johnson then moved for a mistrial outside the presence of the jury. In light of this objection, the district court inquired into the State's purpose in its line of questioning the detective. The State responded, "I was simply collecting a list of who he had interviewed . . . giving the jury an overview of the State's process and who they talked to. . . ." The State also asserted the detective's answer was not made for pre-*Miranda* silence impeachment purposes.

The district court then inquired into the detective's motive in commenting on his attempt to interview Johnson. The State offered to put the detective on the stand to ascertain his motive. The district court found this was unnecessary and instead asked the State to represent the detective's motive. The State speculated, "in [the detective's] police report . . . he had contacted him and asked if he could meet with him but that he was not represented by an attorney and that he would need to talk to that lawyer before he talked to them. . . ." The district court then sustained Johnson's objection and struck the comment upon the finding that the detective's answer was an impermissible

9

comment on Johnson's invocation of his right to remain silent. However, it deferred its ruling on the motion for a mistrial and decided to proceed with the trial based upon a curative instruction given to the jury. This instruction stated:

> The last answer given by [the detective] is stricken. A defendant has a constitutional right to remain silent. The decision whether to exercise this right is left to the defendant. You, the members of the jury, are instructed to disregard the last answer given and to not consider that answer during your deliberations. You are further instructed that you are not to draw any inference at all from the testimony that has been stricken.

Johnson did not object to this instruction, but stated he was "not going to join the Court in that instruction. . . . It's certainly not the instruction I would request." When the State rested its case the district court denied the motion for mistrial.

> The Fifth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. The U.S. Supreme Court has interpreted this right also to bar the prosecution from commenting on a defendant's invocation of that right. A prosecutor may not use evidence of post-arrest, post-*Miranda* silence for either impeachment purposes or as substantive evidence of guilt "because of the promise present in a *Miranda* warning. If a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent guaranteed in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), becomes so diluted as to be rendered worthless. The prosecutor also may not use any post-custody silence to infer guilt in its case-in-chief. In cases of pre-*Miranda,* pre-arrest silence, the prosecutor may not use that evidence solely for the purpose of implying guilt. The prosecutor may use pre-*Miranda* silence, either pre- or post-arrest, for impeachment of the defendant.

*State v. Parker*, 157 Idaho 132, 146–47, 334 P.3d 806, 820–21 (2014) (internal quotations and citations omitted).

Neither party alleges the district court erred in sustaining Johnson's objection to the detective's answer. We agree. The State failed to assert any legitimate purpose for the detective's answer commenting on Johnson's pre-*Miranda* silence, other than to give an overview of his investigation. Accordingly, we find the district court was correct in sustaining the objection and striking the detective's answer as an impermissible comment on Johnson's right to remain silent.

Due to the district court's curative instruction, we hold the district court did not err in denying the motion for mistrial. "The admission of improper evidence does not automatically require the declaration of a mistrial." *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App. 2004).

"Error in admission of evidence may be cured by proper instruction, and it must be presumed that the jury obeyed the trial court's direction." *State v. Tolman*, 121 Idaho 899, 905–06 n.6, 828 P.2d 1304, 1310–11 n.6 (1992) (citing *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989); *see also Lankford*, 162 Idaho at ___, 388 P.3d at 816 ("We presume that the jury followed the jury instruction given by the trial court in reaching its verdict. . . ."); *State v. Rose*, 125 Idaho 266, 269, 869 P.2d 583, 586 (Ct. App. 1994). The United States Supreme Court has similarly proclaimed:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant.

*Greer v. Miller,* 483 U.S. 756, 766 n.8 (1987) (internal citations omitted).

In this case, the entirety of the stricken comment was that the detective "[t]ried to interview Mr. Johnson." At no point did the prosecution encourage or invite the jury to draw any inferences from this comment. As the district court noted, the question the prosecution asked called for a simple yes or no answer to whether the detective interviewed anyone else. After the detective made this impermissible comment, the court granted a curative instruction which informed the jury: 1) of the right to silence; 2) that a defendant was entitled to invoke that right; 3) it was to disregard the detective's comment; and 4) to draw no further inferences from the stricken comment. There is no reason in the record to believe that the jury ignored this instruction and drew impermissible inferences of guilt from the stricken comment. It is therefore presumed the jury followed the district court's curative instruction in its entirety. We hold the events which precipitated this motion for mistrial do not represent a reversible error.

## C. The State committed prosecutorial misconduct when the detective commented on Johnson's invocation of his right to remain silent at trial.

Johnson argues the State committed prosecutorial misconduct when the detective commented on his invocation of his right to remain silent. We agree, given our precedent in *State v. Ellington*, 151 Idaho 53, 253 P.3d 727 (2011), but find such error harmless because the district court gave a curative instruction.

1. The State committed prosecutorial misconduct through the statements of its detective.

It is well-established that a prosecutor commits misconduct by deliberately eliciting or attempting to elicit inadmissible testimony. *State v. Field*, 144 Idaho 559, 572, 165 P.3d 272, 286

11

(2007); *State v. Erickson*, 148 Idaho 679, 684, 227 P.3d 933, 938 (Ct. App. 2010). A prosecutor's inquiry into a line of questioning that has a high probability of eliciting an improper response from a witness may also constitute misconduct. *Ellington*, 151 Idaho at 61, 253 P.3d at 735. Furthermore, "when an officer of the State gives any unsolicited testimony that is gratuitous and prejudicial to the defendant, that testimony will be imputed to the State for the purposes of determining prosecutorial misconduct." *Id.*

In *Ellington*, the prosecutor questioned an officer about whether he interviewed the defendant at the time of arrest. *Id.* The officer responded, "I attempted to." *Id.* at 59, 253 P.3d at 733. This Court held that the prosecutor committed misconduct by inquiring into this line of questioning because it had a high probability of eliciting an improper response. *Id.* In this case, the line of questioning by the State was for the purpose of laying a foundation of the detective's investigation. The State asked if the detective had interviewed anyone else in his investigation, which called for a yes or no answer. This question is not, on its face, an attempt to elicit the inadmissible response given by the detective; thus, the prosecutor's question did not have a high probability of eliciting inadmissible testimony.

The answer given by the detective, however, crosses well over the line. It was gratuitous and offered in clear contravention of Johnson's right to remain silent.

> The Fifth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. U.S. Const. amends. V, XIV; Idaho Const. art. I, § 13. The U.S. Supreme Court has interpreted this right also to bar the prosecution from commenting on a defendant's invocation of that right.

*Id*. at 60–61, 253 P.3d at 734–35 (citing *Griffin v. California,* 380 U.S. 609, 613–14 (1965)).

As noted, the officer's comment in *Ellington* that he "attempted to" interview the defendant, though not solicited by the prosecutor, was "undoubtedly both gratuitous and prejudicial. . . ." *Id*. at 61, 253 P.3d at 735. This comment is almost indistinguishable from the comment the detective made in this case. Accordingly, we hold the detective's gratuitous comment on Johnson's invocation of his right to remain silent constituted prosecutorial misconduct.

2. <u>The prosecutorial misconduct in this case was harmless due to the curative instruction given by the district court.</u>

12

"Where a defendant demonstrates that prosecutorial misconduct has occurred, and such misconduct was followed by a contemporaneous objection by defense counsel, such error shall be reviewed for harmless error." *Perry*, 150 Idaho at 227, 245 P.3d at 979. In *State v. Rose*, the Idaho Court of Appeals was presented with a factually similar scenario to this case. A police officer made an inadmissible comment during trial about the defendant's prior bad act. 125 Idaho at 269, 869 P.2d at 586. The district court struck the officer's comment, granted a curative instruction, and denied the motion for mistrial. *Id.* On appeal, the Idaho Court of Appeals held:

> Given our review of the trial, we cannot say that the district court erred in denying the motion for a mistrial. The testimony was properly stricken from the record and the district court gave a curative instruction. [The defendant] does not offer any indication that the jury failed to follow this instruction, nor do we find such an indication in our own review.

*Id.*

A similar situation was also presented to the Arizona Supreme Court in the case of *State v. Bowen*, 449 P.2d 603 (Ariz. 1969). In that case, a detective made an unsolicited and inadmissible comment about the defendant's refusal to take a polygraph test during trial. *Id.* at 606. The district court then instructed the jury to disregard this inadmissible comment, but denied the motion for mistrial. *Id.* On appeal the Arizona Supreme Court stated:

> There is no question . . . that evidence of, or reference to, a polygraph test is inadmissible for any reason. All authorities are in accord. However, under certain circumstances where an answer is in part unresponsive and there is no indication or claim that the prosecution knew, expected, or solicited the unresponsive answer, there is no error. The court properly instructed the jury to disregard the answer and strike it from the record. We hold that this fully protected the defendant and that if there was error, it was not prejudicial.

*Id.* (internal citations omitted). As stated above, it is presumed that the jury followed the curative instruction given to it by the district court. *Hedger*, 115 Idaho at 598, 768 P.2d at 1331. There is no evidence in this appeal to rebut this presumption. We hold the prosecutorial misconduct in this case was harmless due to the curative instruction given by the district court.

Nevertheless, this Court notes the frequency of appeals arising from officers of the State impermissibly commenting on a criminal defendant's pre-*Miranda* silence at trial. *See e.g., State v. Ellington*, 151 Idaho at 59, 253 P.3d 727, 733 (2011); *State v. Parton*, 154 Idaho 558, 565, 300 P.3d 1046, 1053 (2013) (police officer testifying at trial that he arrested a criminal defendant in part

because he did not respond to questions he asked); *State v. Parker*, 157 Idaho 132, 147, 334 P.3d 806, 821 (2014) (detective testifying at trial that a criminal defendant invoked his right to remain silent during an interview). These cases are all too frequent. This Court stated well-over a century ago that "[a]s public officers, prosecutors have a duty to ensure that defendants receive fair trials." *State v. Irwin*, 9 Idaho 35, 43–44, 71 P. 608, 610–11 (1903). More recently prosecutors were reminded that "[a]s public officers, [they] have a duty to ensure that defendants receive fair trials." *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009). It is self-evident that ensuring a fair trial for defendants would include prosecutors educating their witnesses, particularly sworn peace officers, of the duty to preserve the defendant's rights while testifying. We therefore admonish prosecutors in this State to scrupulously protect a criminal defendant's Fifth Amendment right to remain silent when asking questions of witnesses at trial. Further, prosecutors must proactively educate their witnesses not to impermissibly comment on a defendant's silence in any way during the witness' testimony.

**D. The district court did not err in denying Johnson's motion for mistrial after a witness was improperly refreshed in contravention of Idaho Rule of Evidence 612.**

Johnson argues the district court erred in denying his second motion for mistrial when it allowed a State's witness to testify after being improperly refreshed in contravention of Idaho Rule of Evidence 612. We hold the district court committed error in allowing this witness to testify, but find such error harmless because the relevant evidence the witness provided in his testimony was introduced into evidence later during the trial.

1. The district court committed error in allowing a witness to testify after having his recollection improperly refreshed under Idaho Rule of Evidence 612, because he had no present recollection regarding the topic of his disputed testimony.

Johnson's counsel objected during the testimony of Scott Wilson ("Wilson"), alleging Wilson's memory was improperly refreshed in contravention of Idaho Rule of Evidence 612. Johnson worked for Wilson while he was employed as a computer technician at Trilogy Network Systems ("Trilogy"), during the time he molested A.J. As a computer technician Johnson often worked on location providing technical assistance to customers. The purpose of Wilson's testimony was to provide information about the times and locations Johnson worked on March 19 and 22, 2004.

14

When providing this testimony, on direct examination by the State, Wilson stated he needed his memory refreshed and asked if he could reference some notes. These notes were a copy of a computer generated report that provided information on the times and locations Johnson worked on these dates. Wilson printed this report the day before to assist him in testifying. Johnson objected to the use of this report, alleging its use would constitute an improper refresh of Wilson's recollection under Idaho Rule of Evidence 612. Johnson then moved that Wilson's testimony should be stricken and subsequently moved for a mistrial. The trial judge overruled both motions. Wilson then provided testimony to the jury regarding where Johnson worked on March 22, but not where he worked on March 19.

"If while testifying, a witness uses a writing or object to refresh the memory of the witness, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." I.R.E. 612(a). "A witness may use virtually anything to refresh his or her memory, and the materials need not be admissible themselves." *Baker v. Boren*, 129 Idaho 885, 893, 934 P.2d 951, 959 (Ct. App. 1997). "Use of testimonial notes prepared by a witness from records and correspondence specifically to enhance the witness's memory at trial has been permitted, even though prepared by the witness from records and correspondence specifically to enhance the witness's memory at trial." *Id.* To determine the permissible use of documents to refresh a witness's recollection this Court has modeled its approach on the Federal Rules of Evidence:

> First, the witness must exhibit the need to refresh his or her memory and, second, the witness must confirm that the notes will assist in refreshing his or her memory. The witness may not testify directly from the notes, but can use them to assist in recollection. The purpose of Fed.R.Evid. 612 is to promote the search of credibility and memory. Fed.R.Evid. 612, advisory committee's notes (1972). The court must ensure that the witness actually has a present recollection and is not to allow inadmissible evidence to inadvertently slip in for its truth. Two safeguards have been devised for this purpose. First, the district court has broad discretion in determining whether the witness is truly using the writing to refresh his or her memory, or whether he or she is effectively offering the writing for its truth. Second, Fed.R.Evid. 612 gives opposing counsel the right to inspect at trial whatever is used to refresh recollection, to cross-examine the witness on it and to introduce relevant portions into evidence.

*Thomson v. Olsen*, 147 Idaho 99, 105, 205 P.3d 1235, 1241 (2009) (internal quotations and citations omitted).

15

In this case, part of the first requirements is clearly met. Wilson repeatedly testified he needed his memory refreshed and that his notes would assist him in refreshing his recollection. However, the subsequent requirement is not met because Wilson had *no present recollection regarding Johnson's work activities on March 22, 2004*, but rather was testifying solely from the notes he created the day before trial.

The Idaho Court of Appeals addressed a similar issue in *Baker*, 129 Idaho at 892, 934 P.2d at 958. In that case, a witness was testifying to the contents of a bill. *Id.* The witness was questioned on each of the items listed in the bill in an attempt to determine "what work was done, who performed the work, what amounts of the cost constituted labor as compared with materials, and when the work took place." *Id.* The witness had to consistently refer to prepared notes to answer these questions. *Id.* These were notes the witness created shortly before his testimony to aid his memory. *Id.* The defendant continually objected to the use of these notes under Idaho Rule of Evidence 612. *Id.* The district court overruled these objections and the defendant appealed. The Idaho Court of Appeals held the notes were not used in a manner allowed under Idaho Rule of Evidence 612. *Id.* at 893–94, 934 P.2d at 959–960. The court compared its case with *Bankers Trust Co. v. Publicker Industries Inc.*, 641 F.2d 1361, 1363 (2d Cir. 1981), stating:

> [T]he witness's use of notes in *Bankers Trust Co.,* was allowed because the notes encompassed little of the substance of the witness's testimony. Here, [the witness] relied almost entirely upon his notes to explain the composition of each item on [the bill]. . . . It is error to allow a witness to testify at trial from prepared notes under the guise of refreshing recollection.

*Baker,* 129 Idaho at 893–94, 934 P.2d at 959–60.

We similarly find Wilson had no present recollection; rather, he relied entirely upon the report for his recollection of Johnson's work activities on March 22, 2004. Although Wilson stated at trial there was a point in time in which he knew Johnson's work activities on March 22, he had no present recollection of these facts at the time he was testifying.

On the day prior to his testimony, the prosecution asked Wilson whether he could verify if Johnson worked on March 22, 2004. He told the prosecution, "I can't remember, but I could get that information." Therefore, Wilson went to his office that day and printed off the report specifying Johnson's work activities on March 22, 2004 so he could testify at trial the following day. During trial, Wilson explicitly stated his recollection of Johnson's work activities was solely based on this

report. He further stated he had no present recollection of any personal memories of seeing Johnson on March 22, 2004.

"The court must ensure that the witness actually has a present recollection and is not to allow inadmissible evidence to inadvertently slip in for its truth." *Thomson*, 147 Idaho at 105, 205 P.3d at 1241. Wilson's recollection came entirely from the report he generated the day prior to his testimony, and he admitted such at trial. Because Wilson had no present recollection of Johnson's work activities, the report he printed could not refresh his present recollection. Therefore, his memory was improperly "refreshed" under Idaho Rule of Evidence 612. If the State wanted to introduce the evidence contained within the report, it should have admitted the report as documentary evidence rather than attempting to introduce its contents through the testimony of Wilson. Accordingly, we hold the events which precipitated this motion for mistrial represented error.

2. The district court's error in allowing Wilson to be improperly refreshed is harmless because the relevant evidence in Wilson's impermissible testimony would later be properly introduced into evidence at trial.

 "A defendant appealing from an objected-to, non-constitutionally based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *Perry*, 150 Idaho at 222, 245 P.3d at 927. Johnson's counsel stated the prejudice of Mr. Wilson's testimony was not that Johnson was working at Trilogy on those days. Instead, he was concerned that the report specified what work was being done and where he was working on those days.  Therefore, the evidence in dispute from Wilson's testimony was the location and type of work Johnson performed on March 22, 2004.

Wilson testified Johnson "worked on an account in Burley, Evans Grain; he worked on a couple in Twin Falls, Hollifield Law Office and also Southern Idaho Press; and then for Pickett Equipment."  The State in its briefing explains, "Wilson's testimony regarding Johnson's work on the . . . 22 was to help corroborate . . . the victim was with him at work on the 22." Accordingly, Wilson's testimony regarding where Johnson worked on March 22 was circumstantial evidence to show he could have brought A.J. to work that day. Assuming this evidence has any probative value, its admission into evidence is harmless because this evidence would later be properly admitted during trial.

Johnson testified later in the trial. While cross-examining Johnson the State introduced a personal work calendar ("Exhibit U") Johnson kept while he was working at Trilogy. After Exhibit U was authenticated as accurate and offered into evidence, Johnson stated he had no objection to the exhibit being introduced. Johnson was then asked about Exhibit U by the State on cross-examination:

Q. All right. Now let's go to March 22. You there?

A. Yes.

Q. Does it have any writing on it?

A. Yes, it does.

Q. And does the first writing on it state, "9:30 A.M. SIP" -- I assume that's South Idaho Press – "Burley"; right?

A. Yes.

Q. The second one is "10:00 A.M. Pickett Equipment"; right?

A. Yes.

Q. The third one is "11:45 P.M. Hollifield, Twin Falls"; right?

A. I believe you said 11:45 P.M. It states 1:45 P.M.

Q. I apologize. It's 1:45 P.M. And then, "3:00 P.M. Evans Grain, Rupert." So those are all the accounts you worked on there; right?

A. Yes.

This testimony correlated almost exactly with what Wilson impermissibly testified to earlier in the trial. Johnson would go further and confirm there was even a possibility that he brought A.J. to work that day. Accordingly, we hold the district court's error in allowing Wilson to testify, after having his memory improperly refreshed in contravention of Idaho Rule of Evidence 612, was harmless because the impermissible evidence introduced in that testimony was later introduced without objection during Johnson's testimony in the trial.

**E. The district court did not err in denying Johnson's third motion for mistrial because the State did not commit a discovery violation.**

18

Johnson argues the district court erred in denying his third motion for mistrial after the court concluded the State committed a discovery violation. We hold the district court erred in concluding there was a discovery violation, but such error is harmless because the error was in Johnson's favor and therefore caused no prejudice.

During trial Johnson's counsel objected alleging the State committed a discovery violation by failing to disclose the report Wilson referenced during his testimony. Johnson claimed he filed a discovery request prior to trial, pursuant to Idaho Criminal Rule 16(b)(4), and that this report was never disclosed. The district court sustained the objection finding that by failing to disclose the existence of the report the State committed a discovery violation under Idaho Criminal Rule 16(b)(4). Johnson then moved for a mistrial pursuant to this sustained objection. The district court denied this motion.

Idaho Criminal Rule 16(b)(4) "provides that upon written request certain evidence and materials as set forth in the rule shall be disclosed to the defendant by the prosecution any time following the filing of charges. Among those discoverable items are documents and tangible objects *which are in the possession, custody or control of the prosecuting attorney* and which are material to preparation of a defense." *State v. Schaffer*, 112 Idaho 1024, 1029, 739 P.2d 323, 328 (1987) (emphasis added). We find the district court erred in sustaining Johnson's objection because the State never had possession, custody, or control of the report Wilson referred to during his testimony.

The district court asked Wilson if the State requested him to print off these notes. Wilson stated: "The production of the documents was on my own. I was asked to try to verify what Mr. Johnson was doing on March 22." The State further elicited the following testimony from Wilson.

> A . . . [Y]esterday, I recall that you stated. "I can't remember, but I could get that information [regarding Johnson's work schedule]." Is that correct?
>
> Q: Yes, that's correct.
>
> A: And did I ever request you to go print off a report or any kind of thing to get that information?
>
> A: No, you did not.
>
> Q: I just said, "Could you get that information"?
>
> A: That's correct . . . I specifically asked you yesterday if you want me to print off a report, and you said, "No. Just look at it and see what you can determine."

19

The State previously disclosed Wilson as a witness in discovery. The state was attempting to pin-down when Johnson was at work on March 22. The state could not produce Wilson's report in discovery since Wilson produced the report himself the day before he testified. Because the State never had possession of the report, the district court erred when it determined the State committed a discovery violation pursuant to Idaho Criminal Rule 16(b)(4). However, the court's error is harmless because the error was in Johnson's favor and did not cause prejudice. Thus, there was no error in failing to grant Johnson's third motion for mistrial.

**F. The errors combined in this case do not amount to cumulative error.**

Johnson claims that if the errors committed by the district court and the State are harmless, combined they amount to cumulative error. "Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial." *Perry*, 150 Idaho at 230, 245 P.3d at 982. "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998) (citing *Bruton v. United States*, 391 U.S. 123, 135, (1968)). The district court erred here in allowing a witness to improperly refresh his memory and in finding a discovery violation by the State. The State erred through the detective's impermissible comment about Johnson's silence. None of these errors left any lasting prejudice in the case. Viewing these errors in relation to the totality of the evidence presented at trial, we do not find that they were of such magnitude that Johnson was denied a fair trial. We therefore find that the cumulative error doctrine does not require reversal of Johnson's conviction.

### III. CONCLUSION

For the reasons stated above, we affirm the conviction and sentence of the defendant.

Justice HORTON, and Justice *pro tem* TROUT, CONCUR.

BURDICK, C.J., concurring.

I concur with the majority's reasoning and conclusion that the cumulative error doctrine does not require reversal of Johnson's conviction. I also concur with the majority's holding that the prosecutor below engaged in misconduct when the State's detective witness commented on Johnson's invocation of his right to remain silent. I write separately only to further emphasize the

20

majority's admonishment to prosecutors who examine public officers whom, in turn, impermissibly comment on a defendant's Fifth Amendment right to remain silent.

This Court holds "when an officer of the State gives any unsolicited testimony that is gratuitous and prejudicial to the defendant, that testimony will be imputed to the State for purposes of determining prosecutorial misconduct." *State v. Ellington*, 151 Idaho 53, 61, 253 P.3d 727, 735 (2011). Prosecutors therefore engage in misconduct when the State's witness impermissibly comments on a defendant's Fifth Amendment right to silence. *Id*. at 59, 253 P.3d at 733. The frequency of appeals arising from State officials making such comments is troublesome. *State v. Parker*, 157 Idaho 132, 147, 334 P.3d 806, 821 (2014) (concluding that the prosecutor engaged in misconduct because the prosecutor's questioning of a detective witness elicited an improper response on defendant's right to silence); *State v. Skunkcap*, 157 Idaho 221, 233, 335 P.3d 561, 573 (2014) (concluding that the prosecutor engaged in misconduct because the prosecutor questioned a detective witness regarding defendant's refusal to answer any questions); *State v. Parton*, 154 Idaho 558, 565–67, 300 P.3d 1046, 1053–55 (2013) (concluding that the prosecutor engaged in misconduct when the prosecutor's questioning of two officers elicited testimony that violated the defendant's Fifth Amendment rights); *Ellington*, 151 Idaho at 61, 253 P.3d at 735 (concluding that the prosecutor engaged in misconduct when an officer testified that he "attempted to" speak with the defendant); *State v. Erikson*, 148 Idaho 679, 685, 227 P.3d 933, 939 (Ct. App. 2010) (concluding that the prosecutor engaged in misconduct when the prosecutor elicited evidence that the defendant exercised his right to remain silent).

Here, the majority holds that the prosecutor engaged in misconduct because the State's detective witness impermissibly commented on Johnson's invocation of his right to remain silent by testifying that the detective "[t]ried to interview Mr. Johnson." The majority, however, concludes that the error was harmless because the district judge gave a curative instruction. The majority ultimately affirms Johnson's conviction and sentence. Although I agree with the majority's ultimate conclusion, I write to express my concern that appeals involving similar instances of prosecutorial misconduct have become all too familiar.

In *Parker*, this Court held "the prosecutor engaged in misconduct because the prosecutor's line of questioning with [a detective witness] caused an improper comment on [defendant]'s silence for purposes of implying guilt." 157 Idaho at 147, 334 P.3d at 821. However, this Court went on to hold that the error was harmless because the defendant did not meet his burden of proving "there

[was] a reasonable possibility that the error affected the outcome of the trial." *Id*. at 148, 334 P.3d at 822 (quoting *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010)). Immediately following the *Parker* decision, this Court again held that a prosecutor engaged in misconduct because a detective witness commented on the defendant's refusal to answer the detective's questions. *Skunkcap*, 157 Idaho at 235, 335 P.3d at 575. This Court reprimanded the prosecutor because this Court concluded the "sole purpose of the testimony was to seek to have the jury infer that Defendant must be guilty because he would not talk after he was arrested." *Id.* at 233, 335 P.3d at 573. Despite the reprimand, the defendant's conviction was upheld because this Court was "not persuaded that there [was] a reasonable likelihood that the deputy prosecutor's misconduct affected the jury's verdict." *Id*. at 235, 335 P.3d at 575. The same situation described above arose a year earlier in *Parton*. 154 Idaho at 568–69, 300 P.3d at 1056–57. There, this Court held that the prosecutor engaged in misconduct by asking an officer witness to testify as to the defendant's statements where defendant asked for an "attorney when confronted with the allegation that he had" committed a crime. *Id*. at 567, 300 P.3d at 1055. This pattern of testimony is incongruent with prosecutors' duties.

Indeed, "[a]s public officers, prosecutors have a duty to ensure that defendants receive fair trials." *Parker*, 157 Idaho at 144, 334 P.3d at 818 (quoting *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009)). Given the immense power entrusted to prosecutors, it is imperative that prosecutors adhere to this fundamental duty. There seems to be little excuse for this recurring violation from law enforcement officers who are highly trained by experts, who appear in court proceedings on a reoccurring basis, and who are expertly prepared by prosecuting attorneys for numerous court hearings. It seems all of this training, expertise, time and money could come up with more appropriate responses than to comment on a criminally charged defendant's right to remain silent. The risk of losing an important case keeps getting higher with repeated violations.

JONES, J., dissenting.

I respectfully dissent from the majority's decision. Considering the number of errors that occurred during Johnson's trial, I would vacate the conviction and remand the case for a new trial.

A.  **The district court fundamentally erred when it disclosed that Johnson's prior case had been reversed and remanded.**

The majority relies on *State v. Lankford*, 162 Idaho 477, 399 P.3d 804 (2017), in holding that the district court did not fundamentally err by disclosing that Johnson's previous case was reversed

and remanded. In *Lankford*, the district court made the following statement to the jury during voir dire:

> There was a prior trial in Idaho County in 1984 for the offenses for which he is now charged. And an Appeals Court held that Mr. Lankford was not effectively represented and that his trial was therefore unfair.

*Id*. at ___, 399 P.3d at 813. Lankford argued that the district court's statement about his prior trial and appeal amounted to fundamental error because it essentially informed the jury that he had previously been found guilty and convicted. *Id*. at ___, 399 P.3d at 812.

To establish fundamental error, this Court has held that the defendant must prove that the alleged error: "(1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless." *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). "Many courts, including the Supreme Court of the United States, have held that the fact that a juror knew that the defendant has been found guilty or convicted by a previous jury for the same crime creates an implied bias and constitutes fundamental error because it is inherently prejudicial." *Lankford*, 162 Idaho at ___, 399 P.3d at 812 (citing *Leonard v. United States*, 378 U.S. 544 (1964)).

Accordingly, our analysis must focus on whether the district court's comments informed the jury that Johnson had been found guilty or convicted by a previous jury for the same offense. In *Lankford*, this Court ultimately found that the district court's statement was harmless because it did not reveal the outcome of Lankford's previous trial, recognizing the distinction between the mention of a previous trial and the mention of a previous conviction. *Id*. at ___, 399 P.3d at 813. Along these lines, the Court admitted that

> While the mention of a previous conviction is certainly very damaging, *see, e.g., Arthur*, 715 F.2d at 119 ("[W]e are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged." (quoting *United States v. Williams*, 568 F.2d 464, 471 (5th Cir. 1978))), the fact that the jury is aware that a defendant is facing trial for a second time simply does not carry the same weight. *Watkins*, 152 Idaho at 766, 274 P.3d at 1281 ("We are not persuaded that this is equivalent to the disclosure that a previous jury had found him guilty."). The fact that a defendant is being retried, without reference to a defendant's conviction or guilt, is no more prejudicial than the fact that the defendant has been held to answer to a criminal charge. Such prejudice is not a basis for relief because it is neither extreme nor unfair, but rather is an inevitable part of the criminal process. *Brown*, 313 S.W.3d at 607 ("[T]he fact that the jury may have been aware

that [the defendant] was being retried no more infringed upon his right to be presumed innocent than does the jury's awareness that the defendant was arrested, indicted, and put on trial.").

*Id.* at ___, 399 P.3d at 814.

In the present case, the majority holds that the district court's comment that Johnson's case had been reversed and remanded is not the equivalent of disclosing a prior conviction. I disagree and firmly believe that the district court's disclosure that the case was "reversed" goes beyond mere mention of a prior trial, but conveys to the jury that the defendant had been previously convicted. To presume otherwise would be to infer that the jury believed it was possible to reverse an innocent verdict.

In *Lankford*, this Court declined to address whether disclosure of a prior conviction for the same offense would be cause for a finding of implied bias because the district court did not mention that Lankford was convicted. *Id.* at ___, 399 P.3d at 813. However, the Court did note that the mention of a previous conviction would be "very damaging." *Id.* at ___, 399 P.3d at 814. I would hold that the district court's statement was not merely a mention of Johnson's prior trial, but instead was a mention of a prior conviction. As a result, I would find that the district court committed fundamental error, and I would vacate Johnson's conviction and remand the case for a new trial.

**B. The errors in this case, while potentially harmless individually, create cumulative error when combined.**

Next, I disagree with the majority's holding that there was not cumulative error in this case. It is paramount that the state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also* Idaho Const. art. I, § 13. This Court has interpreted the clause to "require states to ensure that criminal defendants' trials be fundamentally fair." *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009) (citing *Schwartzmiller v. Winters*, 99 Idaho 18, 19, 576 P.2d 1052, 1053 (1978)). A trial does not need to be error-free to be considered fundamentally fair. *Id.* (internal citation omitted). Nonetheless, the cumulative error doctrine provides as follows:

> [A] series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Martinez*, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *See State v. Hawkins*, 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct. App. 1998).

24

*State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010). As a result, "the cumulative error doctrine requires reversal of a conviction when there is 'an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, the errors show the absence of a fair trial, in contravention of the defendant's constitutional right to due process.'" *State v. Field*, 144 Idaho 559, 572–73, 165 P.3d 273, 286–87 (2007) (quoting *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998)).

The majority admits that at least two errors occurred in this case. First, the State committed prosecutorial misconduct when a detective impermissibly commented on Johnson's invocation of his right to remain silent at trial. The Fifth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, section 13 of the Idaho Constitution, guarantee a criminal defendant the right not to be compelled to testify against himself. U.S. Const. amends V, XIV; Idaho Const. art. I § 13. A defendant's right to remain silent also bars the prosecution from commenting on a defendant's invocation of that right. *State v. Ellington*, 151 Idaho 53, 60, 253 P.3d 727, 734 (2011) (citing *Griffin v. California*, 380 U.S. 609, 613–14 (1965)). The majority correctly acknowledges that "the answer given by the detective . . . crosses well over the line. It was gratuitous and offered in clear contravention of Johnson's right to remain silent." In spite of this, the majority contends that this error was harmless due to a subsequent curative instruction given by the district court.

Second, the district court erred when it allowed a witness to testify after having his recollection improperly refreshed under Idaho Rule of Evidence 612 because he had no present recollection regarding the topic of his disputed testimony. When testifying, "[a] witness may use virtually anything to refresh his or her memory, and the materials need not be admissible themselves." *Baker v. Boren*, 129 Idaho 885, 893, 934 P.2d 951, 959 (Ct. App. 1997). However, "[t]he court must ensure that the witness actually has a present recollection and is not to allow inadmissible evidence to inadvertently slip in for its truth." *Thomson v. Olsen*, 147 Idaho 99, 105, 205 P.3d 1235, 1241 (2009). In this case, Wilson admitted that he had no present recollection of Johnson's work activities on March 22, 2004. The majority determined that Wilson's testimony was in contravention of Idaho Rule of Evidence 612, but nonetheless considered this error to be harmless because the relevant evidence used by Wilson in his testimony was later properly introduced. Additionally, I believe that a third error occurred when the district court disclosed that Johnson's previous case was reversed and remanded, as explained above in Section A.

An error is harmless if the Court finds that the result would be the same without the error. *State v. Almaraz*, 154 Idaho 584, 598, 301 P.3d 242, 256 (2013). While I agree that the two errors identified by the majority may have been harmless on their own, I cannot agree that there was not cumulative error in this case. Johnson has a protected right to due process, which mandates that his trial be fundamentally fair. *Severson*, 147 Idaho at 715, 215 P.3d at 435. The bottom line is that the errors in this case, when aggregated, show that Johnson did not receive a fair trial. I would vacate Johnson's conviction and remand the case for a new trial.