**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49747**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Filed: January 4, 2024** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| ROBERT LEWIS STEPHENS, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment of conviction for forcible penetration by use of a foreign object, <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Robert Lewis Stephens appeals from his judgment of conviction for forcible penetration by use of a foreign object. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2021, Stephens and a group of acquaintances spent the afternoon playing disc golf. Stephens and the victim, G.B., were among the group that evening along with Brandon, Nicole, and Ray. Following their outing, the group went to a nearby restaurant and bar. Later that evening, Stephens and G.B. went to Ray's apartment. During the early hours of the following day, G.B. called the police to report that she had woken up to Stephens sexually assaulting her.

1

The State charged Stephens with one count of forcible penetration by use of a foreign object.  I.C. § 18-6608.  Stephens pled not guilty and the case proceeded to trial.  At trial, the district court overruled multiple hearsay objections regarding the admissibility of statements made on the night of the incident.  Ultimately, the jury found Stephens guilty.  Stephens appeals.

## II.

## ANALYSIS

Stephens argues the district court erred by erroneously admitting three different statements into evidence during his trial.  The State responds that Stephens has failed to show error in the admission of any of the challenged statements and alternatively argues that any error is harmless.  We need not address the admissibility of the challenged statements because, even assuming the statements were erroneously admitted, the State has met its burden of showing that any error was harmless.

### A.  Harmless Error

Error is not reversible unless it is prejudicial.  *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017).  Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the error did not contribute to the jury's verdict.  *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017).  Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.  *Yates v. Evatt*, 500 U.S. 391, 403 (1991); *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020).  This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error.  *Id.*  If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless.  *Id.*  The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented.  *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Stephens complains of three errors, all of which relate to admission of statements made while the group was at the restaurant and bar.  The first alleged error is the district court's

admission of a statement G.B. made to Stephens in response to an invitation to go to Ray's apartment to watch a television show. Brandon testified that G.B.'s response was, "If I do this, nothing's going to happen." The district court admitted the statement over Stephens' hearsay objection and instructed the jury it could only consider the statement for its effect on Stephens. Stephens' response to G.B.'s statement was: "Don't f***ing play games with me. You know what you want."

The second alleged error involves a statement made regarding Stephens' behavior toward G.B. In particular, in response to Stephens trying to kiss G.B.'s neck, Nicole testified that Brandon told Stephens that G.B. had a boyfriend who Stephens had met. The district court overruled Stephens' hearsay objection to this statement.

The third and final alleged error relates to Brandon's testimony that G.B. mouthed the words "thank you" to him after Brandon confronted Stephens about his behavior toward G.B., including reminding Stephens that G.B. had a boyfriend. The district court overruled Stephens' hearsay objection, concluding the words "thank you" did not appear to be an assertion and, as such, could not be offered for the truth of the matter asserted.

Even assuming any error in the admission of these statements, the probative force of each alleged error was minimal. As to the first challenged statement, that G.B. told Stephens "nothing's going to happen," the district court instructed the jury it could only consider the statement for its effect on Stephens. The jury is presumed to have followed the district court's limiting instruction. *See State v. Johnson*, 163 Idaho 412, 422, 414 P.3d 234, 244 (2018). Considered in that context, the statement has little, if any, independent probative force. Rather, its probative force is attributable to Stephens' unobjected-to, admissible response warning G.B. not to "f***ing play games" with him and telling her she "know[s] what [she] want[s]." The second challenged statement also has little, if any, probative force because telling Stephens that G.B. had a boyfriend did not elicit any disputed fact. Moreover, Brandon testified, without objection, that he told Stephens as much. Finally, that G.B. thanked Brandon for intervening on her behalf has limited probative value. At best, such a sentiment is only probative of G.B. being uncomfortable with Stephens' advances at the restaurant because that is the context in which the statement was made.

The minimal probative force of each alleged error is outweighed by the probative force of the record establishing guilt beyond a reasonable doubt without the alleged errors. The other

evidence presented includes G.B.'s testimony about what occurred that evening. G.B. testified that she was "extremely" intoxicated and "uncomfortable" at the restaurant and that, after arriving at Ray's apartment, she fell asleep. G.B. testified that her next memory was Stephens' hand in her vagina. G.B. testified that, when she realized what was happening, she panicked and tried to get Stephens off of her by "punching" him and yelling at him not to touch her. Once Stephens left the apartment, G.B. called law enforcement.

G.B.'s testimony recounting what occurred that night was corroborated by multiple witnesses who described, without objection, Stephens' interactions with G.B. on the day of the incident. That testimony included that Stephens became "more touchy" toward G.B.; he "had his arms around" G.B. after her boyfriend left; he attempted to kiss G.B. on the neck; and he put G.B.'s legs over his and when, G.B. removed them, Stephens "grabbed her legs and pulled them back onto him." In addition, Ray testified that G.B. physically removed herself from Stephens at the restaurant; Nicole testified that G.B. tried ignoring Stephens and did not encourage or approve of his behavior at the restaurant; and Brandon testified that, based on G.B.'s "wide-eyed" stare and look of concern, she did not want to ride home from the restaurant with Stephens (nor did she do so).

Ray also testified about what occurred at his apartment. Ray described G.B. as being "very intoxicated" and testified that her eyes "were glazed over," "she had quit talking," and was not coherent. Ray testified that he saw Stephens and G.B. go into Ray's bedroom where Stephens was straightening out the covers before Ray intervened and "ran them out of [the] bedroom." Stephens responded by twice telling Ray he was going to walk G.B. home and that Ray was not to go with them. Ray told Stephens: "That's not going to happen." Ray eventually fell asleep but was awoken by a "scuffling." Ray then saw a "flurry of movement"; Stephens was "on top of" G.B.; and he heard G.B. yell, "Get off of me!" G.B. was "throwing punches" at Stephens, so Ray got between them and Stephens ran out the door. The probative force of the record (without the alleged errors) compared to the little (if any) probative force of the alleged errors demonstrates that admission of the challenged statements was harmless.

Stephens argues the alleged errors were not harmless because "the jury was ready to hang," which he contends "objectively demonstrates" that the three alleged errors "had a non-minimal probative impact in relation to everything else the jury considered, particularly where the central

4

issue for the jury was whether to believe G.B.'s version of events or Mr. Stephens' version of events." Stephens' contention that "the jury was ready to hang" is based on a question from the jury that asked: "In the situation we are unable to reach a unanimous decision, what is the procedural needs [sic] to determine a 'hung jury.'" In response, the district court asked the jury to indicate whether there was "any possibility that, with additional time for deliberation, the jury will reach a unanimous verdict." The jury answered "yes." Stephens' characterization of the jury's question as an indication that the jury was "ready to hang" overstates the question and overlooks the jury's response. Moreover, when considered in the context of two of the jury's other questions, the jury appeared to be grappling with G.B.'s intoxication and its relationship to the resistance requirement for forcible penetration. Those questions were: (1) "Does 4(a)[1] 'when G.B. was either (a) prevented from resistance by any intoxicated [sic], narcotic, or anesthetic substance;' require us to define level of intoxication for G.B."; and (2) does element 4(a) "depend on the level of intoxication or is any amount of intoxication an example that meets the definition of 'prevented from resistance'?"

The jury's only other "question" requested: (1) "the record of Rob S. and Det. Newberry read into evidence," noting it could "be found on p.69 lines 5-9"; and (2) "text messages read into [the] record." The "record" referred to in the first request was from the interview of Stephens when the detective asked him: "Okay, so when she woke up, had you had your hand on her vagina at that time?" and Stephens answered, "I already moved my hand up to her breast at that point." The text messages referenced in the second request were messages G.B. wrote complaining about Stephens' behavior. Contrary to Stephens' argument, none of the jury's questions demonstrate that the alleged errors "had a non-minimal probative impact" because none of the questions relate to the alleged errors--they all relate to unchallenged evidence weighed as part of the record establishing guilt beyond a reasonable doubt without the alleged errors.

---

[1] The jury's reference to "4(a)" is to the fourth element of the forcible penetration instruction, which required the jury to find that G.B. "was either (a) prevented from resistance by any intoxicating, narcotic, or anesthetic substance, or (b) unconscious of the nature of the act because she was unconscious or asleep."

Stephens' assertion that the alleged errors were also not harmless because of the "he said-she said" nature of the case is also unpersuasive because the State presented testimony from several witnesses, including one witness who was present in the room at the time of the alleged offense and who corroborated G.B.'s version of events. The State has met its burden of demonstrating the three alleged errors were harmless.

**B.      Cumulative Error**

Stephens contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors (harmless in and of themselves) may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). A necessary predicate to the application of the doctrine is a finding of more than one error. *Id.* Even assuming evidentiary error in relation to the admission of the challenged statements, Stephens is not entitled to relief based on cumulative error because, beyond being individually harmless, the alleged errors are cumulatively harmless in light of their lack of probative force as compared to the weight of the remaining evidence supporting the jury's guilty verdict.

**IV.**

**CONCLUSION**

Even assuming error in the admission of the challenged hearsay statements, any alleged errors were harmless. Additionally, Stephens is not entitled to relief based on cumulative error. Therefore, Stephens' judgment of conviction for forcible penetration by use of a foreign object is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.

6